PEOPLE v VINCENT

Docket No. 105808. Argued April 10, 1997 (Calendar No. 12). Decided July 15, 1997. Rehearing denied 456 Mich 1201.

Duyonn A. Vincent and two codefendants were charged in the Genesee Circuit Court with open murder and possession of a firearm during the commission of a felony, arising from a shooting death that occurred during a confrontation between two groups of youths. The defendants were tried before two separate juries during one trial. At the close of the prosecution's case in chief, counsel for all three defendants moved for directed verdicts of acquittal with respect to the charges of first-degree murder, arguing that there was insufficient evidence of premeditation and deliberation. The court, Donald R. Freeman, J., reserved his ruling on the motion, but defense counsel maintained that a remark by the judge had directed a verdict resulting in a final judgment of acquittal of the first-degree murder charges, implicating double jeopardy. Thereafter, the jury convicted Vincent of first-degree murder and felony-firearm. The Court of Appeals, TAYLOR, P.J., and JANSEN and SMOLENSKI, JJ., reversed and remanded for entry of a conviction of second-degree murder and for resentencing, finding that the conviction of first-degree murder violated Vincent's constitutional right not to be placed twice in jeopardy. The Court further held that the trial court's statement was not ambiguous (Docket No. 157220). The people appeal.

In an opinion by Chief Justice MALLETT, joined by Justices BOYLE, RILEY, and WEAVER, the Supreme Court held:

In order to qualify as a directed verdict of acquittal there must be either a clear statement in the record or a signed order of judgment articulating the reasons for granting or denying the motion so that it is evident that there has been a final resolution of some or all the factual elements of the offense charged. In this case, the judge's comments concerning the sufficiency of evidence regarding the issue of premeditation and deliberation lacked the requisite degree of clarity and specificity. In addition, there was no formal judgment or order entered on the record to indicate what the exact nature of the ruling was and why. Accordingly, the responses of the trial judge to the motions for directed verdicts never became final with respect to the charge of first-degree murder. The continuation of

the trial and subsequent conviction did not prejudice or violate the defendant's constitutional rights.

1. A judge's characterization of a ruling and the form of the ruling may not be controlling. Ultimately, what must be determined is whether the ruling of the judge, whatever its label, actually represents a resolution of some or all of the factual elements of the offense charged. In this case, the trial judge did not evaluate all the evidence, nor did he render a statement of sufficient clarity and finality that could be construed as an order. His comment did not represent an actual resolution of some or all of the factual elements of the offense charged. Therefore, further proceedings were not barred by the Double Jeopardy Clause, and Vincent's rights were not violated.

2. A judge's thinking process should not have binding effect until formally incorporated into the findings, conclusions, or judgment. In this case, the judge did not explicitly refer to legal insufficiency or to those factors he actually had considered or rejected. When ruling on the sufficiency of the evidence, a court generally must give a particularized detailed analysis on the record of the evidence and reasoning that forms the basis of its decision and a clear statement that the motion is either granted or denied. None of the indicia of formality associated with final judgments are present. The judge was correct: he did not direct a verdict. His statements did not resound in finality, and, to the contrary, they are clearly equivocal.

Reversed.

Justice CAVANAGH, joined by Justices BRICKLEY and KELLY, dissenting, stated that the statements of the trial judge, made in response to defense counsel's motions for a directed verdict of acquittal on the charge of first-degree murder, constitute a resolution, correct or not, of some or all the factual elements of the offense charged. The court's reversal of its directed verdict resulted in further proceedings in which the jury resolved factual issues concerning the elements of first-degree murder contrary to the defendant's right not to be placed twice in jeopardy regarding that charge.

215 Mich App 458; 546 NW2d 662 (1996) reversed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Arthur A. Busch*, Prosecuting Attorney, and *Donald A. Kuebler*, Chief, Research, Training and Appeals, for the people.

State Appellate Defender (by *Randy E. Davidson*) for the defendant.

Amici Curiae:

*Ronald J. Bretz* and *Patrick Levine Rose* for Criminal Defense Attorneys of Michigan.

*Michael Thomas,* President, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training and Appeals, for Prosecuting Attorneys Association of Michigan.

MALLETT, C.J. We granted leave in this case to determine whether the Court of Appeals properly characterized a particular statement made by a trial judge as a directed verdict of acquittal. We reverse the judgment of the Court of Appeals and hold that the judge's inchoate observations did not ripen into a directed verdict of acquittal and did not become a final judgment. There was neither a written or signed order nor an oral or written ruling on the record sufficiently detailing the reasons for granting or denying the motion. Consequently, the defendant's constitutional right not to be placed twice in jeopardy was not violated by the submission of the issue to the jury.

I

The defendant and his two codefendants were charged with open murder and possession of a firearm during the commission of a felony, arising from the shooting death of Markeis Jones. Jones was shot during a confrontation between two groups of youths at Hamady High School in Flint. The defendant and his friends did not attend Hamady, but were waiting

for friends who were attending a dance at the high school. In the school driveway the two groups of youths began arguing. There was some pushing and shoving and some verbal threats. Ultimately several shots were fired out of the back of a Mustang hatchback. Testimony indicated that defendant and codefendant Dameon Perkins fired shots from the back of the car. Codefendant Marcus Hopkins drove the car away as the shots were fired. There is some evidence in the record indicating that the shots missed their intended mark and inadvertently hit Markeis Jones, a friend of the defendants. There is also evidence in the record that the confrontation was gang related, involving rival groups known as "Folks Up" and "Folks Down."

All three young men were charged with open murder and felony firearm and were tried before two separate juries during one trial. Defendant Vincent and codefendant Hopkins were tried by one jury, while codefendant Perkins was tried by a second. At the close of the prosecution's case in chief, counsel for all three defendants moved for directed verdicts of acquittal on the charges of first-degree murder, arguing that there was insufficient evidence of premeditation and deliberation and that the shooting was unplanned and spontaneous. The prosecution opposed the motion.

When defense counsel had completed their arguments on the motion, the trial court judge responded with the following comment:

> Well my impression at this time is that there's not been shown premeditation or planning in the, in the alleged slaying. That what we have at the very best is Second Degree Murder. I don't see that the participation of any of the

defendants is any different then [sic] anyone else as I hear the comment made by Mr. Doll [counsel for Perkins] about the short time in which his client was in the vehicle. But I think looking at it in a broad scope as to what part each and every one of them played, if at all, in the event that it's not our premeditation planning episode. It may very well be the circumstance for bad judgement was used in having weapons but the weapons themselves may relate to a type of intent, but don't necessarily have to show the planning of premeditation. I have to consider all the factors. I think that the second Count should remain as it is, felony firearm. And I think that Second Degree Murder is an appropriate charge as to the defendants. Okay.

This discussion took place outside the hearing of the jury. Before adjourning the proceedings, the prosecutor requested time the next day to "make a brief restatement in terms of the First Degree Murder . . . ." The judge replied that he would "be glad to hear it . . . [and that he was] always glad to hear [the] people."

The next day, the prosecution presented an argument regarding the quantum or threshold of evidence sufficient to survive a motion for a directed verdict on the charges of first-degree murder. After hearing both sides, and over the objections of defense counsel, the judge decided to reserve his ruling on the motion until he heard and thought more about the issues. Defense counsel maintained that the judge had directed a verdict resulting in a final judgment of acquittal regarding the first-degree murder charges, and that double jeopardy concerns were implicated.[1]

---

[1] We note that in reserving his ruling on the motion for directed verdict that the trial judge violated MCR 6.419(A), which provides:

The judge, reconsidering his earlier remarks, noted that the jury had not been informed of any of the discussion, and, therefore, the defendant had not been prejudiced. The judge was adamant that he had not directed a verdict, "I haven't directed a verdict to anybody. . . . Oh, I granted a motion but I have not directed a verdict." All three defendants were convicted: Vincent of first-degree murder, Hopkins of involuntary manslaughter, and Perkins of second-degree murder. All three appealed in the Court of Appeals.

Codefendant Hopkins, who had been convicted of involuntary manslaughter, raised the double jeopardy issue on appeal. In an unpublished opinion, the Court

---

After the prosecutor has rested the prosecution's case in chief and before the defendant presents proofs, the court on its own initiative may, or on the defendant's motion must, direct a verdict of acquittal on any charged offense as to which the evidence is insufficient to support conviction. *The court may not reserve decision on the defendant's motion.* If the defendant's motion is made after the defendant presents proofs, the court may reserve decision on the motion, submit the case to the jury, and decide the motion before or after the jury has completed its deliberations. [Emphasis added.]

Defense counsel cited the rule, but did not object to the trial court's express decision to reserve its ruling on the motion. Counsel's objection was based on the belief that the judge directed a verdict and then changed his mind. We are persuaded that, under the circumstances of this case, any error that might have occurred from the judge's decision to reserve the motion was harmless. The issue was never discussed in front of, or taken from, the jury. Even though it is improper to reserve a ruling on this motion, because the defendant must have notice of the charges he is facing before presenting his proofs, we note that when Vincent testified he was still on notice that he was being tried for first-degree murder. Regardless of the propriety of reserving the motion, the charge was never dropped and the presentation of the defense was not impaired.

See *People v Higgs*, 209 Mich App 306, 307; 530 NW2d 182 (1995) (postponing a hearing on a defendant's motion for directed verdict is harmless error where the prosecutor presented sufficient evidence to convict the defendant at the close of his proofs).

of Appeals held that the judge's ruling was not a final judgment or ruling, but the mere expression of an opinion.

> While the court expressed an opinion that ultimately would have ripened into a final ruling had nothing intervened and the court taken the issue from the jury, the court, before acting on its expressed opinion, agreed to hear further argument from the prosecutor regarding the issue. When the court recessed for the day, everyone was aware that the prosecutor was going to present further argument on the issue of first-degree murder the next morning, before defendants would proceed with their cases. The matter was addressed the next morning, and the court reconsidered its opinion earlier expressed, concluding that it would reserve ruling. Thus, the record indicates that the court expressed an opinion, and then before finalizing that opinion, agreed to entertain further argument. The court did not make a final ruling until it denied defendant's motion for directed verdict and submitted the case to the jury. We conclude the court was not barred from further consideration of the matter. [Unpublished opinion per curiam, issued October 20, 1995 (Docket No. 158133), slip op at 2.]

The Court also concluded that MCR 6.419, which bars the judge from reserving his ruling on the motion was not violated because in this case Hopkins did not present any proofs and the judge made clear that he wanted the jury to decide between the different degrees of murder. *Id.* at 3. The *Hopkins* Court also concluded that in viewing the evidence in the light most favorable to the prosecution there was sufficient evidence to support a conviction of first-degree murder. Consequently, the trial court did not err in denying the motion. *Id.*

Codefendant Perkins also raised the double jeopardy issue in his separate appeal. In an unpublished

opinion, the Court of Appeals noted both that the trial of the first-degree murder charge continued after hearing the prosecution's arguments and that the jury was ultimately instructed on first-degree murder. Accordingly then, the Court held that "[s]ince the trial court had never indicated to the jury that it was directing a verdict of acquittal on first-degree murder, there was no prejudice to defendant and, more importantly, defendant's double jeopardy rights were not violated." Unpublished opinion per curiam, issued November 21, 1995 (Docket No. 160177), slip op at 2.

The *Perkins* Court held, just as the Court in *Hopkins*, that the prosecutor had presented sufficient evidence of premeditation and deliberation so the trial court did not err in denying the motion for directed verdict or in instructing the jury on the charge. "We are satisfied that the prosecution did present sufficient evidence from which a rational trier of fact could have concluded that the killing was done with premeditation and deliberation." *Id.*[2]

However, a third panel of the Court of Appeals heard defendant Vincent's appeal, and in a published opinion reversed the decision of the trial court. Vincent also argued that his conviction of first-degree murder violated his constitutional right not to be placed twice in jeopardy. 215 Mich App 458, 460; 546 NW2d 662 (1996). The Court agreed, reversed the conviction, and remanded the case "for entry of a conviction of second-degree murder and for resen-

---

[2] This case was remanded to the trial court for resentencing. The Court held that the sentence imposed at the maximum of the guidelines range, fifteen to twenty-five years, was inappropriate, given Perkins' age and lack of criminal history. *Id.* at 1.

tencing." *Id.* at 471.[3] The Court conceded that the trial judge's first statement "Well, my impression at this time," was ambiguous, but that the later statement "What we have at the very best is second-degree murder," was not. *Id.* at 468.

We reverse the decision of the Court of Appeals and hold, on the basis of the following evaluation, that the judge's inchoate impressions did not mature into a final judgment of acquittal of the charge. Consequently, Vincent's right not to be placed twice in jeopardy was not violated.[4]

---

[3] The Court noted it was not bound by the two earlier unpublished opinions pursuant to Administrative Order No. 1994-4 and MCR 7.215. *Vincent* at 463.

[4] Because we have determined that in this case a judgment was not rendered, we need not reach whether or under what circumstances the judge can reverse or correct a ruling. However, we are aware that there is a split of authority among our sister states on this particular question. Compare *United States v Washington*, 48 F3d 73, 79 (CA 2, 1995) ("oral grant of a motion for acquittal is 'no more than an interlocutory order,' which the court has 'inherent power to reconsider and modify . . . prior to the entry of judgment'" [citation omitted]); *In re Lionel F*, 76 NY2d 747, 749; 559 NYS2d 228; 558 NE2d 30 (1990) ("There is no constitutional impediment to a court's power to modify its decisions, provided such a modification does not subject an individual to double jeopardy" [citation omitted]); *People v Dist Court*, 663 P2d 616, 621 (Colo, 1983) ("we see no reason why the double jeopardy prohibition should preclude a trial judge from correcting during the trial itself an erroneous ruling on a motion for a judgment of acquittal when no threat of retrial would arise from the correction and the accused has suffered no demonstrable prejudice by reason of the correction"); *State v Iovino*, 524 A2d 556, 560 (RI, 1987) ("the corrected ruling by the trial justice did not in any way inhibit defendant's presentation of any evidence that he might have chosen to adduce in respect to the greater as well as the lesser included offenses"); with *Watson v State*, 410 So 2d 207, 209 (Fla, 1982) ("the ruling of the trial judge made the day before, without any indication that the matter was still under consideration, had progressed toward finality beyond the point that would permit its retraction or correction"); *Brooks v State*, 308 Ark 660, 668; 827 SW2d 119 (1992) ("dismissing the robbery charge and then reinstating it at the conclusion of all the evidence could well have curtailed the appellant's ability to present a full defense to this charge").

II

A

We recognize that a judge's characterization of a ruling and the form of the ruling may not be controlling. *People v Anderson*, 409 Mich 474, 486; 295 NW2d 482 (1980); *United States v Martin Linen Supply Co*, 430 US 564, 571, n 9; 97 S Ct 1349; 51 L Ed 2d 642 (1977). "The Court must inquire whether 'the ruling in [defendant's] favor was actually an "acquittal" even though the District Court characterized it otherwise.' *United States v Wilson*, 420 US 332, 336 [95 S Ct 1013; 43 L Ed 2d 232] (1975)." Ultimately what we must determine is "whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *Martin Linen* at 571.

Determining whether the trial court's statement, made at the conclusion of the defendant's motions for directed verdict, was tantamount to rendering a directed verdict is crucial because, if a directed verdict were rendered, further proceedings would violate the defendant's double jeopardy rights.

> [W]hen a trial court enters such a judgment, the Double Jeopardy Clause bars an appeal by the prosecution not only when it might result in a second trial, but also if reversal would translate into further proceedings devoted to the resolution of factual issues going to the elements of the offense charged. [*Smalis v Pennsylvania*, 476 US 140, 142; 106 S Ct 1745; 90 L Ed 2d 116 (1986).]

Consequently, under federal precedent and our recent decision in *People v Nix*, 453 Mich 619; 556 NW2d 866 (1996), characterizing the court's comments as a directed verdict would compel us to over-

turn the defendant's convictions. However, we find that *Nix* is distinguishable from the case at bar. In *Nix*, we held that the judge's order in form and substance was a final judgment of acquittal. The judge undertook an evaluation of all the evidence and determined on the record that the evidence was insufficient to sustain a conviction on any count. A formal order was written and granted. Under those circumstances, we affirmed the Court of Appeals holding that the judge could not stay the entry of this order pending the prosecutor's appeal and thus avoid the defendant's protection against double jeopardy. *Id.* at 622-624. Whether or not erroneous, the judge evaluated the evidence and entered a formal judgment of acquittal.

Unlike the trial judge in *Nix*, the trial judge in *Vincent* did not undertake an evaluation of all the evidence, nor did he render a statement of sufficient clarity and finality that could be construed as an order. Taken in the context of the entire proceedings, the impressions of the judge cannot be transformed into a directed verdict on the issue of premeditation and deliberation. Consequently, we hold that the judge's comment did not represent an actual resolution of some or all of the factual elements of the offense charged. Therefore, further proceedings were not barred by the Double Jeopardy Clause, and the defendant's rights were not violated.[5]

---

[5] Three protections are embodied in the Double Jeopardy Clause: protections "against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices of Boston Municipal Court v Lydon,* 466 US 294, 306-307; 104 S Ct 1805; 80 L Ed 2d 311 (1984). Because we hold that there was no acquittal in this case, the principles embodied within these protections were not violated.

We reaffirm the principles articulated in *Nix*, *Anderson*, *Martin Linen*, and *Smalis* and now undertake to explain why in this case there was no directed verdict.[6]

B

In *People v Hampton*, 407 Mich 354; 285 NW2d 284 (1979), this Court considered the standards for directed verdicts, recognizing that inconsistency existed among the published decisions of the Court of Appeals. *Id.* at 366. In *Hampton*, we discussed the quantum of evidence required to survive a motion for directed verdict. In assessing the sufficiency of evidence we held that

> the trial judge when ruling on a motion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made, . . . in a light most favorable to the prosecution, . . . and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt . . . . [*Id.* at 368.]

---

[6] We respectfully disagree with the dissent's statement that we are wilfully violating the principles articulated in this line of cases. The facts in the case at bar are distinguishable from both *Anderson* and *Nix*, *supra*. *Nix* is discussed in the body of the opinion. *Anderson* involved a trial judge's decision to accept a midtrial plea of guilty of manslaughter. When the judge accepted the plea, he dismissed charges of first- and second-degree murder and discharged the jury. *Id.* at 480-481. *Vincent* does not involve either the stay of a formal order as in *Nix* or the acceptance of a plea and subsequent dismissal of both the charges and the jury as in *Anderson*. This case turns on the characterization of an ambiguous statement of a trial judge.

As we stated, had we determined that the judge's remarks represented an actual resolution of a factual element of the offense charged, we would be compelled to reverse the decision of the Court of Appeals. Here, we decided that these remarks did not sufficiently resolve anything.

Following our decision in *Hampton*, we stated that
"[r]etrial is not permitted if the trial court evaluated
the evidence and determined that it was legally insuf-
ficient to sustain a conviction." *People v Mehall*, 454
Mich 1, 6; 557 NW2d 110 (1997)   (citing *Martin
Linen*). In *Mehall* we held that there was no acquittal
and that a retrial was not precluded when the judge
failed to properly consider all the evidence under the
standard articulated in Hampton. See also *People v
Wolfe*, 440 Mich 508; 489 NW2d 748 (1992).

We are not convinced that the standards articulated
in *Hampton* and *Mehall* were met in this trial judge's
statement of his impressions, nor are we convinced
that the judge's statement rose to the requisite level
of certainty and finality to constitute a directed ver-
dict. There was no indication in the record that the
judge evaluated all the evidence in the light most
favorable to the prosecution. *Mehall* at 6. There is no
way to assess which pieces of evidence reflecting pre-
meditation and deliberation or lack thereof the court
considered or rejected because there was no mention
of them reflected in the express remarks of the court.
There was also no explicit reference to legal insuffi-
ciency. Further, although the judge mentioned that he
was considering all the factors, there was no indica-
tion which factors he had actually considered or
rejected.[7]

---

[7] Trial testimony indicated that the youths were going to Hamady to
fight. They collected guns and ammunition and test-fired the weapons
before arriving at the school. Vincent testified that he anticipated trouble
because some other persons he might encounter did not like him. Further,
testimony indicates that Vincent and Perkins reentered the Mustang
together, knelt in the back seat, aimed the weapons out the raised
hatchback, and commenced shooting. Further testimony indicated that
the confrontation was gang related. From this, it is quite possible that a
rational trier of fact could have found that the essential elements of the

Accordingly we hold this general inconclusive statement to be no more than a judge thinking out loud. The foundation laid to support this conclusory impression was inadequate. When ruling on the sufficiency of the evidence, a court must generally give a more particularized detailed analysis on the record of the evidence and reasoning that forms the basis of the decision and a clear statement that the motion is either granted or denied.

C

In *Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977), Justice LEVIN observed that "[t]he rule is well established that courts speak through their judgments and decrees, not their oral statements or written opinions. Generally, a judgment or order is reduced to written form, . . . until reduced to writing and signed, the judgment did not become effective . . . ." That case involved a civil matter, but there is no reason that a lesser standard should be acceptable in criminal cases in which a defendant's liberty interest is at stake. Our rules of criminal procedure and our judgments based on them must not tolerate ambiguity or indecision in judgments rendered.

The Supreme Court of Washington has decided a case similar to the present one. In *State v Collins*, 112 Wash 2d 303; 771 P2d 350 (1989), the trial judge orally dismissed a charge of third-degree assault as a result of the prosecutor's failure to produce sufficient evidence regarding the element of intent after hearing

---

crime, premeditation and deliberation, were proven beyond a reasonable doubt. The trial court did not assess any of these proofs in the record or indicate why it might have believed that they were insufficient.

argument from both sides. *Id.* at 304. However, within minutes, the prosecutor offered further argument and authority, and the judge reinstated the charge. The defendant appealed, arguing that her double jeopardy rights had been violated.

In holding that the judge's oral ruling was not final when given, the Washington Supreme Court emphatically stated that it was returning to a "rule long followed in this state that a ruling is final only after it is signed by the trial judge in the journal entry or is issued in formal court orders." *Id.* at 308. In overruling a previous case embracing a rule that allowed for too many ambiguous and inconsistent results the court stated:

> The outcome of something as important as deciding whether a defendant was exposed to double jeopardy should not hang on such guesswork. . . . To serve the ends of certainty, reliance on the final written court order or written journal entry to determine the finality of a ruling is the better rule . . . [m]any judges will think out loud along the way to reaching the final result. It is only proper that this thinking process not have final or binding effect until formally incorporated into the findings, conclusions, and judgment. [*Id.*][8]

---

[8] The standard overruled in *Collins* was enunciated in *State v Dowling*, 98 Wash 2d 542, 547; 656 P2d 497 (1983),  and provided that

[a] finding by the court as the trier of fact, without a jury, when read conclusively into the record in such a manner as to indicate that it is neither tentative nor made with reservation or advisement nor subject to further consideration or proceedings in the same case, will support a judgment of acquittal or dismissal.

We note that even under this test, the trial court's impressions here would not support an acquittal because its comments were tentative, made with reservation, and subject to further consideration.

We agree with this simple straightforward reasoning. A judge's thinking process should not have final or binding effect until formally incorporated into the findings, conclusions, or judgment. This concept finds support in our own court rules. MCR 2.602(A) requires that judgments and orders be "in writing, signed by the court and dated with the date they are signed." None of the indicia of formality associated with final judgments are present in the trial judge's comments at issue here. There was no statement in the record that an order or judgment was being entered at all. "Okay" does not equate with "It is so ordered." Further, we note that the trial court did not substantially comply with the requirement of MCR 6.419(D) that provides "[t]he court must state orally on the record or in a written ruling made a part of the record its reasons for granting or denying a motion for a directed verdict of acquittal . . . ." As we stated in part II(B), the loose impressions of the judge cannot be construed as an adequate evaluation of the evidence. Instead, it reflects a tentative conclusion, not a formal resolution on the factual elements of the offense charged.

There was nothing to indicate that the judge's impression in this case was anything more than an initial assessment of a possible future ruling. *People v Jackson*, 232 AD2d 193; 647 NYS2d 764 (1996). Similarly there was nothing to indicate that this was anything more than a continuing discussion between the parties. *State v Newfield*, 161 Ariz 470, 472; 778 P2d 1366 (Ariz App, 1989). Further, we are inclined to agree with a decision of the United States Court of Appeals for the Second Circuit holding that a judge's decision to submit the charge to the jury implicitly

denies the motion. *United States v Bruno*, 873 F2d
555, 562 (CA 2, 1989).

The fact that the judge decided to entertain addi-
tional arguments the next day is further indication
that he had not made a final decision. We are aware
that how the judge characterizes his statement is not
controlling, nor is the form of the so-called ruling
controlling, but in this case we find that the judge
was correct. He had not directed a verdict. State-
ments couched in the terms "my impression," "I
think," "in the event that it's not our premeditation
planning episode," and "[i]t may very well be," do not
resound in finality. To the contrary they are clearly
equivocal. We would be hard pressed to call this kind
of indecisive pondering a final judgment of acquittal.[9]

III

We hold that in order to qualify as a directed ver-
dict of acquittal there must be either a clear state-
ment in the record or a signed order of judgment
articulating the reasons for granting or denying the
motion so that it is evident that there has been a final
resolution of some or all the factual elements of the

---

[9] We note that MCR 2.602(A) governs entry of judgment and orders in
civil proceedings and that MCR 6.419 provides the rules to be followed in
criminal proceedings. We are aware that the rules do not mandate formal
motions or rulings, however, it is clear that a certain degree of formality
is required. MCR 6.419 allows the trial court to state orally, or in writing,
its reasons for denying or granting the motion. We leave trial judges with
this choice, but caution that, whichever form is employed, the judgment
must bear sufficient indicia of finality to survive an appeal. Factors that
might be considered in evaluating finality, in addition to a clear statement
in the record or a signed order, might also include an instruction to the
jury that a charge or element of the charge has been dismissed by the
judge or that a docket entry has been made reflecting the trial court's
action. These examples are illustrative only because each case will turn
on its own particular circumstances.

offense charged. In this case, the judge's comments concerning the sufficiency of evidence regarding the issue of premeditation and deliberation lacked the requisite degree of clarity and specificity. In addition, there was no formal judgment or order entered on the record to indicate what the exact nature of the ruling was and why. Accordingly, we hold that the responses of the trial judge to the motions for directed verdicts never became final with respect to the charge of first-degree murder. Consequently, the continuation of the trial and subsequent conviction did not prejudice or violate the defendant's constitutional rights.

BOYLE, RILEY, and WEAVER, JJ., concurred with MALLETT, C.J.

CAVANAGH, J. (*dissenting*). This case presents the identical issue we dealt with earlier this term in *People v Nix*, 453 Mich 619; 556 NW2d 866 (1996), which decision was based on controlling case law from the United States Supreme Court and this Court's acknowledgment of those binding precedents in *People v Anderson*, 409 Mich 474; 295 NW2d 482 (1980). The majority purports to "reaffirm the principles articulated in *Nix* [and] *Anderson*," *ante*, p 121, but in fact departs from those principles. In so doing, the majority violates the rule of law. Accordingly, I dissent.

I

The legal principles that are dispositive of this case have not changed since they were set forth in *Nix*:

> In *Fong Foo v United States*, 369 US 141; 82 S Ct 671; 7 L Ed 2d 629 (1962), the trial court, during presentation of the

prosecutor's case in chief, "directed the jury to return verdicts of acquittal as to all the defendants, and a formal judgment of acquittal was subsequently entered." *Id.* at 142. On appeal, the United States Court of Appeals for the First Circuit held that the district court was without power to direct the acquittals, and ordered the case remanded to the trial court. On further appeal, the United States Supreme Court held as follows: "The Court of Appeals thought, not without reason, that the acquittal was based upon an egregiously erroneous foundation. Nevertheless, '[t]he verdict of acquittal was final, and could not be reviewed . . . without putting [the petitioners] twice in jeopardy, and thereby violating the constitution.'" *Id.* at 143 (citing *United States v Ball*, 163 US 662, 671; 16 S Ct 1192; 41 L Ed 300 [1896]).

In *United States v Martin Linen Supply Co*, 430 US 564, 571; 97 S Ct 1349; 51 L Ed 2d 642 (1977), the United States Supreme Court reaffirmed this principle from *Ball* and *Fong Foo*, stating: "[W]e have emphasized that what constitutes 'an acquittal' is not to be controlled by the form of the judge's action. Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." (Citations omitted.)[4]

[4]This principle was more recently reaffirmed in *Smalis v Pennsylvania*, 476 US 140; 106 S Ct 1745; 90 L Ed 2d 116 (1986).

In *People v Anderson*, 409 Mich 474, 486; 295 NW2d 482 (1980), this Court acknowledged and applied this legal principle:

"To be sure, the judge did not say that he was directing a verdict, and no formal judgment of acquittal was entered. The determination of what the judge did, however, does not turn on how the judge characterizes his actions. '[T]he trial judge's characterization of his own actions cannot control the classification of the action.'[24] What constitutes an 'acquittal' is not controlled by the form of the judge's action.[25]

"To decide how a trial judge's action should be characterized, the reviewing court 'must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual ele-

ments of the offense charged.'[26] There is an acquittal and
retrial is impermissible when the judge 'evaluated the Gov-
ernment's evidence and determined that it was legally insuf-
ficient to sustain a conviction.'[27]

---

[24]*United States v Scott* [437 US 82, 96; 98 S Ct 2187; 57 L Ed 2d
65 (1978)], quoting *United States v Jorn* [400 US 470, 478, n 7; 91 S
Ct 547; 27 L Ed 2d 543 (1971)] (plurality opinion). See *United
States v Martin Linen Supply Co, supra.* . . .

[25]*United States v Martin Linen Supply Co, supra,* p 571.

[26]*Id.*

[27]*Id.,* p 572. See *People v Hampton,* 407 Mich 354, 385-386; 285
NW2d 284 (1979) (RYAN, J.)."

[*Nix,* 453 Mich 624-626.]

The insignificant factual distinctions between *Nix*
and the case at bar relied on by the majority notwith-
standing, the application of these legal principles to
the instant case is straightforward and warrants
affirmance of the Court of Appeals.

II

A

In my opinion, the outcome of this case is deter-
mined by the following facts: the statements of the
trial judge at issue here were made after the close of
the prosecutor's case in chief and were in response to
defense counsel's motions for directed verdicts of
acquittal on the first-degree murder charges; the
judge's statements expressed his legal opinion of the
legal sufficiency of the evidence presented relative to
the appropriate degree of murder that a reasonable
jury could find defendants guilty of; at the separate
hearing conducted the next day there was no new evi-
dence introduced; and, at this next day hearing, the
trial judge, in response to defense counsel's argument

that he had directed a verdict, said, "Oh, I granted a motion but I have not directed a verdict."[1]

Applying the controlling legal principles to these facts, I can only conclude that the trial judge considered all the prosecutor's evidence, and that, in his opinion,[2] that evidence was legally insufficient to allow a charge of first-degree murder to be submitted to the jury. "To be sure, the judge did not say that he was directing a verdict, and no formal judgment of acquittal was entered. The determination of what the judge did, however, does not turn on how the judge characterizes his actions." *Anderson*, 409 Mich 486.

B

The trial judge's comments were as follows:

---

[1] This latter statement of the trial judge evidences his belief that he had to actually instruct the jury on the charges it could consider before it could be said that he had directed a verdict on the first-degree murder charges. This statement by itself constitutes sufficient evidence that the trial judge was certain that he had ruled on the evidence relative to the first-degree murder charges. His belief that he could reverse that ruling simply because the jury did not know about it is clearly at odds with the legal principles reiterated in part I of this opinion.

In addition to the fact that the trial judge's understanding of the controlling legal principles was erroneous, the majority's conclusion that the trial judge's violation of MCR 6.419(A) was harmless error because "the presentation of the defense was not impaired," *ante*, p 115, n 1, is equally baseless. The defendant did not know what charges would be submitted to the jury, depriving him of knowledge he had an undisputed right to, knowledge that could have affected the presentation of his defense. More importantly, however, I reject the majority's attempt even to apply a harmless error analysis in this case. An error affecting a defendant's federal constitutional right not to be placed twice in jeopardy is not susceptible of harmless error analysis. The majority's attempt to employ this analysis is erroneous on its face, but is even more so by virtue of its mischaracterizing a federal constitutional violation as a mere violation of a state court procedural rule.

[2] Or his "impression" or his "think[ing]" or any other synonymous term that, in this context, connotes his "evaluation" of the evidence.

> Well my impression at this time is that there's not been
> shown premeditation or planning in the, in the alleged slay-
> ing. That what we have at the very best is Second Degree
> Murder. I don't see that the participation of any of the
> defendants is any different then [sic] anyone else as I hear
> the comment made by Mr. Doll [counsel for Perkins] about
> the short time in which his client was in the vehicle. But I
> think looking at it in a broad scope as to what part each
> and every one of them played, if at all, in the event that it's
> not our premeditation planning episode. It may very well be
> the circumstance for bad judgement was used in having
> weapons but the weapons themselves may relate to a type
> of intent, but don't necessarily have to show the planning of
> premeditation. I have to consider all the factors. I think that
> the second Count should remain as it is, felony firearm.
> And I think that Second Degree Murder is an appropriate
> charge as to the defendants. Okay.

The majority seizes upon the word "impression," when in fact the determinative phrase is "at this time" because this latter phrase refers to a chronological point after the prosecution had presented all its evidence and closed its case in chief.[3]

The majority's selective extraction of two other phrases—"in the event that it's not our premeditation planning episode" and "[i]t may very well be"—further ignores the conclusive nature of the trial judge's statements. This is readily demonstrated by reading these phrases in their true context.

Referring to the participation of all three defendants in the crime for which they were tried, the trial judge said: "But I think looking at it in a broad scope as to what part each and every one of them played, if

---

[3] The majority utilizes phrases such as "the judge's inchoate impressions," *ante*, p 118, "this conclusory impression," *id.*, p 123, and "the loose impressions of the judge," *id.*, p 125. None of these phrases, in my opinion, undermines the true character of the trial court's action.

at all, in the event that it's not our premeditation planning episode." If looked at objectively, it should not be difficult to decipher the essential meaning of this sentence: Looking at the big picture with respect to what part, if any, each and every one of these defendants played in this event, it is not a case involving premeditation or planning.

The other phrase taken out of context by the majority undermines further its attempt to find uncertainty and indecision where, in fact, there exists judicious consideration and decision. The relevant sentence is, " 'It may very well be the circumstance for bad judgement was used in having weapons but the weapons themselves may relate to a type of intent, but don't necessarily have to show the planning of premeditation.' "[4] Paraphrased, accurately and in its entirety, the essence of this sentence is as follows: The fact that defendants had weapons may be evidence of their bad judgment, and it is evidence to be considered in determining their intent, but the mere existence of the weapons per se does not prove the premeditation or planning required for a charge of first-degree murder.[5] And the very next statement of the trial judge, ignored by the majority, shows the truly deliberative nature of his comments: "I have to consider all the factors." Then, having considered all the evidence, having looked at the "broad scope" of the circumstances of the crime, having "consider[ed] all the factors," the trial judge concluded: "And I think

---

[4] *Ante*, p 114.

[5] In rephrasing these statements of the trial judge, I imply no criticism whatsoever, grammatical or otherwise. The extemporaneous comments of a trial judge in the heat of trial should not be held to the same standards of grammar and diction one should rightly expect from the solitude of appellate chambers.

that Second Degree Murder is an appropriate charge as to the defendants."

C

The majority's disregard for the principles articulated in *Nix* and *Anderson* leads to its reliance on several irrelevant factors.

The majority emphasizes that the trial judge's statements were made "outside the hearing of the jury." *Ante*, p 114. This fact is of no consequence whatsoever for purposes of applying the federal constitutional decisions of the United States Supreme Court that we acknowledged and applied in *Nix* and *Anderson*.[6]

The majority also inappropriately relies on the majority decision of the Supreme Court of Washington in *State v Collins*, 112 Wash 2d 303; 771 P2d 350 (1989). There are several reasons that this reliance is inappropriate, the dispositive one being that the *Collins* majority does not even purport to follow the relevant case law of the United States Supreme Court.[7] In fact, the *Collins* majority fails to even cite the relevant United States Supreme Court cases.[8]

---

[6] I would also point out that during a jury trial, motions for directed verdict (and other motions seeking a legal ruling from the judge) are routinely argued and decided without the jury being present.

[7] Other reasons that the *Collins* decision is inapposite to the case at bar include the fact that *Collins* dealt with a bench trial and, more importantly, the *Collins* majority considered the issue before it solely in the context of a rule that Court previously had set forth purely as a matter of state law.

[8] The dissenting justice, however, correctly cites and applies *Fong Foo* and *Martin Linen Supply*. See *Collins, supra*, pp 311-314.

III

In my opinion, the statements of the trial judge, made in response to defense counsel's motions for directed verdict of acquittal on the charges of first-degree murder, constitute "a resolution, correct or not, of some or all of the factual elements of the offense charged." *Martin Linen Supply*, 430 US 571. Therefore, under the clear and controlling case law of the United States Supreme Court, "[t]he court's reversal of its directed verdict resulted in further proceedings in which the jury resolved factual issues concerning the elements of first-degree murder contrary to defendant's right not to be placed twice in jeopardy regarding the first-degree murder charge." 215 Mich App 458, 469; 546 NW2d 662 (1996) (citing *Smalis v Pennsylvania, supra*).

I would affirm the decision of the Court of Appeals.

BRICKLEY and KELLY, JJ., concurred with CAVANAGH, J.