# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALICE DENISE EVANS,

Defendant-Appellant.

UNPUBLISHED
January 21, 2016

No. 323230
Wayne Circuit Court
LC No. 13-008313-FC

Before: STEPHENS, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

A jury convicted defendant of armed robbery, MCL 750.529, and conspiracy to commit armed robbery, MCL 750.157a. The trial court sentenced her as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 15 to 24 years for the robbery conviction and 85 months to 24 years for the conspiracy conviction. Defendant appeals as of right. For the reasons explained in this opinion, we affirm defendant's convictions, but remand for further proceedings consistent with *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

## I. BASIC FACTS

Defendant's convictions arise from the robbery of Cheap Charlies, a store in Detroit where defendant worked. The robbery occurred at about 7:00 a.m. on August 10, 2013, shortly after defendant and co-worker, William Carroll, arrived to open the store. Defendant typically waited outside the store while Carroll deactivated the security alarm and turned on the lights. On the morning in question, while defendant waited outside, a man entered the store, assaulted Carroll, threatened to shoot Carroll, and then stole money from the cash registers. Defendant, initially believed to be a witness to the robbery, described an unknown man as the robber. She told police that the robber pushed her to the ground before entering the store and that she was unable to call 911 because she could not get to her cell phone. Police determined these claims to be untrue after viewing video footage in which defendant was not pushed during the incident and in which defendant could be seen using her cell phone.

After becoming a suspect in the robbery, defendant gave a statement to police, and she named another co-worker, Al Butler, as the robber. Defendant admitted that she knew beforehand that Butler intended to rob the store and, when asked how long she and Butler had been planning the robbery, defendant responded: "[a] couple of months." However, Butler's physical characteristics did not match those of the robber, and Butler was eliminated as a

-1-

suspect. When Butler was eliminated as a suspect, defendant was questioned again, but she refused to identify the man who carried out the robbery. After this questioning, while an officer was returning defendant to her jail cell, defendant spontaneously told the police officer, "I'm sorry for lying to you, I was just the look-out." The jury convicted defendant of armed robbery and conspiracy to commit armed robbery. The trial court sentenced defendant as noted above. Defendant now appeals as of right.

## II. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor "engaged in a pattern of asking leading questions and introducing inadmissible and/or irrelevant and inflammatory evidence." In particular, defendant claims that the prosecutor engaged in misconduct by having a police officer testify to defendant's admission that she was "the look-out." While the officer described this remark as an "excited utterance" by defendant, defendant claims it was in actuality inadmissible hearsay. Defendant also complains that the prosecutor impermissibly used leading questions during redirect examination of witness Kimball Vaughn, one of the owners of the store, to suggest that defendant's hysterical reaction to the robbery was feigned.

Defendant failed to object to the prosecutor's conduct or to request a curative instruction, meaning that defendant's claim of prosecutorial misconduct is unpreserved and reviewed for plain error affecting defendant's substantial rights. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). When a claim of prosecutorial misconduct is unpreserved, "we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003). "Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "[A] prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Brown*, 294 Mich App at 383.

In this case, contrary to defendant's argument, the prosecutor did not commit misconduct by introducing evidence of defendant's statement that she was a "look-out." Defendant argues that this statement did not constitute an excited utterance under MRE 803(2) and that the prosecutor committed misconduct by offering it at trial. An excited utterance is a "statement relating to a startling event or condition made while defendant was under the stress of excitement caused by the event or condition." MRE 803(2). Although we agree that defendant's statement cannot be characterized as an excited utterance under MRE 803(2), this does not preclude the statement's admission. Instead, as an admission by defendant offered in evidence against defendant, it was not hearsay at all. Rather, it was an admission by a party opponent and thus admissible as substantive evidence under MRE 801(d)(2)(A). See *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). Accordingly, there was no plain error in the prosecutor's good-faith introduction of admissible evidence.[1] *Brown*, 294 Mich App at 383.

---

[1] In the alternative, defendant argues that counsel provided ineffective assistance by failing to object to the prosecutor's introduction of defendant's hearsay admission that she was the "look-

With regard to defendant's claim that the prosecutor impermissibly asked leading questions of Vaughn during redirect, defendant has not shown that the use of leading questions constitutes prosecutorial misconduct requiring reversal. See *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). That is, while leading questions are generally considered improper during direct examination, they are not categorically prohibited. See MCL 768.24 ("Within the discretion of the court no question asked of a witness shall be deemed objectionable solely because it is leading."); MRE 611(d)(1) ("Leading questions should not be used on direct examination of a witness *except* as may be necessary to develop the witness' testimony."). And, the prosecutor's use of leading questions does not automatically necessitate reversal. *Watson*, 245 Mich App at 587. Instead, to warrant relief, the defendant must "show some prejudice or pattern of eliciting inadmissible testimony." *Id.* "Where the defendant was not prejudiced by the leading questions, reversal is not required." *Id.* In this case, defendant identifies two leading questions by the prosecutor.[2] We do not think that two brief questions in the course of the entire trial constitute a troublesome pattern. Moreover, defendant fails to explain how she was prejudiced by this questioning, particularly given the other evidence of her guilt, and any prejudice could have been cured by a jury instruction. Given defendant's failure to demonstrate prejudice, she is not entitled to reversal on this basis. See *Callon*, 256 Mich App at 329-330.

III. SENTENCING ISSUES

A. SCORING OF THE GUIDELINES

Defendant argues that the trial court erred in scoring offense variables (OVs) 4 and 10. In particular, defendant contends that OV 4 was improperly scored because there was no evidence that Carroll suffered serious psychological injury. Likewise, defendant maintains that OV 10 should not have been scored because there was no evidence Carroll had demonstrated a vulnerability that was exploited during the robbery.

Defendant objected at sentencing to the scoring of OV 10 on the same grounds urged on appeal. Therefore, this issue is preserved with respect to OV 10. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). However, although defendant also objected at sentencing to the scoring of OV 4, she did so based on a ground other than that raised on appeal. "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996). Therefore, this issue is unpreserved with respect to OV 4, and reviewed for plain error. *People v Odom*, 276 Mich App 407, 411; 740 NW2d 557 (2007).

out." However, because the prosecutor's introduction of admissible evidence was not improper, any objection by defense counsel would have been meritless, and counsel cannot be considered ineffective for failing to make a futile objection. See *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007).

[2] Specifically, Vaughn testified that, during a phone call with defendant shortly after the robbery, defendant "was kind of hysterical and she said, we had just got robbed." During redirect, the prosecutor then questioned Vaughn as follows: "you don't know whether she was crying and carrying on to cover her tracks because she was involved in this, do you?" and "[s]o she could have been acting that way for that purpose, too, is that fair to say?"

Determining whether a trial court properly scored sentencing variables is a two-step process. First, the trial court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. The clear error standard asks whether the appellate court is left with a definite and firm conviction that a mistake has been made. Second, the appellate court considers de novo "whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute." [*People v Rhodes,* 495 Mich 938; 843 NW2d 214 (2014) (internal citations omitted).]

Defendant first challenges the trial court's assessment of 10 points for OV 4, which considers "psychological injury to a victim." MCL 777.34(1). A score of 10 points is authorized when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The instructions provide that 10 points are to be scored "if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2). For example, this Court has affirmed the scoring of OV 4 where "the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). Evidence of nightmares and difficulty sleeping may also support the scoring of OV 4. See, e.g., *People v Earl*, 297 Mich App 104, 110; 822 NW2d 271 (2012); *People v Drohan*, 264 Mich App 77, 90; 689 NW2d 750 (2004).

In this case, a preponderance of the evidence supports the trial court's findings that Carroll suffered from residual psychological effects from the robbery such as "not being able to sleep, nightmares, physical responses as well." Carroll testified at trial that he was "terrified" during the robbery. Then, at sentencing, almost a year after the robbery, one of the store's owners, Terrance Farnen testified, based on his conversations with Carroll, that Carroll was so "anxious" that he would get an upset stomach, that Carroll could be "sick for days," that he had nightmares, and that he awoke sometimes in the middle of the night sweating and feeling as though "somebody's coming to get him." This evidence amply supported the trial court's conclusion that Carroll may require psychological treatment. See MCL 777.34(2). Defendant has not shown plain error in the scoring of OV 4.

Defendant challenges the trial court's 15-point score for OV 10, which considers "exploitation of a vulnerable victim." MCL 777.40(1). The term "exploit" is defined as "to manipulate a victim for selfish or unethical purposes" and "vulnerability" is defined as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(b) and (c). A score of 15 points is authorized if "[p]redatory conduct was involved." MCL 777.40(1)(a). Predatory conduct is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). In other words, "'[p]redatory conduct' under the statute is behavior that precedes the offense, directed at a person for the primary purpose of causing that person to suffer from an injurious action or to be deceived." *People v Cannon*, 481 Mich 152, 161; 749 NW2d 257 (2008). For example, "[t]he timing and location of an offense—waiting until a victim is alone and isolated—is evidence of predatory conduct." *People v Ackah-Essien*, __ Mich App __, __; __ NW2d __ (2015), slip op at 12. The statute does not require that the victim have an inherent vulnerability to merit a score under OV 10. *People v Huston*, 489 Mich 451, 466; 802 NW2d 261 (2011). "Rather, the

statutory language allows for susceptibility arising from external circumstances as well," and the defendant's predatory conduct may enhance a victim's vulnerability. *Id.* at 466-467.

In this case, the trial court found that defendant engaged in preoffense conduct specifically directed at Carroll, who was vulnerable in part because he was an older man who walked with a cane. The court also noted that defendant's participation involved waiting outside while Carroll opened the store and that Carroll was specifically targeted because "he was the one that was opening up the store." Those findings are not clearly erroneous and support the 15-point score. Defendant planned the robbery with another person. The robbery was scheduled for a day when Carroll, a 67-year-old man who walked with a cane, opened the store. Defendant pretended to guard the door while Carroll opened the store when in actuality she was waiting for her confederate when the circumstances were optimal for a successful robbery—while Carroll was alone in the store after he had unlocked the doors and deactivated the alarm, but before he turned on the lights. The trial court did not clearly err in assessing 15 points for OV 10.

## B. JUDICIAL FACT-FINDING

Defendant also argues that the trial court impermissibly engaged in judicial fact-finding with respect to OVs 3, 4 and 10 to increase her minimum sentence range under the guidelines in contravention of *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). Because defendant did not object to the scoring of the guidelines at sentencing on this ground, this issue is not preserved, and our review is limited to plain error affecting defendant's substantial rights. *Lockridge*, 498 Mich at 392.

Recently, in *Lockridge*, our Supreme Court held that the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne*, "applies to Michigan's sentencing guidelines and renders them constitutionally deficient" because of "the extent to which the guidelines *require* judicial fact-finding beyond the facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." *Lockridge*, 498 Mich at 364. To remedy this defect, the Court held that "a guidelines minimum sentence range calculated in violation of *Apprendi* and *Alleyne* is advisory only . . . ." *Lockridge*, 498 Mich at 365.

We agree that the trial court engaged in judicial fact-finding when it scored OVs 3, 4, and 10. The court's determinations that Carroll suffered both a bodily and serious psychological injury, and that defendant engaged in predatory conduct against a vulnerable victim, were based on facts beyond those found by the jury or admitted by defendant. Cf. *People v Stokes*, ___ Mich App ___, ___; ___ NW2d ___ (2015), slip op at 6-7. Further, because the scoring of these variables affected the recommended minimum sentencing range, and the trial court sentenced defendant within the resulting guidelines range, it is apparent that defendant has made a threshold showing of potential for plain error sufficient to warrant a remand to the trial court for further inquiry. *Lockridge*, 498 Mich at 395.

Accordingly, we remand this case to the trial court for a *Crosby*[3] hearing to determine whether the court would have imposed a materially different sentence under the sentencing procedure described in part VI of our Supreme Court's decision in *Lockridge*, 498 Mich at 395-399. Under these procedures, defendant faces the possibility of a more severe sentence, meaning that she must be given the opportunity to inform the trial court that resentencing will not be sought. *Stokes*, slip op at 11-12. If the trial court determines that it would have imposed the same sentence absent the unconstitutional constraint on its discretion, it may reaffirm the original sentence. *Lockridge*, 498 Mich at 396-399. If, however, the court determines that it would not have imposed the same sentence absent the unconstitutional constraint on its discretion, it shall resentence defendant. *Id.*

## C. ASSESSMENT OF COURT COSTS

Defendant argues that the trial court erred in assessing $400 in court costs. Specifically, because there was no statute authorizing the imposition of such costs at the time of her sentencing, defendant asserts that she is entitled to have the court costs vacated in keeping with *People v Cunningham*, 496 Mich 145, 158; 852 NW2d 118 (2014).[4] Defendant's claim is not supported by the record.

At sentencing, the trial court verbally ordered defendant to pay $130 for the "state cost," $136 for the "crime victims assessment," and $400 for "court costs." But, it appears that the trial court intended to impose attorney fees and simply misspoke when it referred to "court costs." That is, the assessments correspond to figures in the presentence report, which recommended that defendant pay "$130.00 State Cost," "a crime victim's assessment" of $136, and "*attorney fees* of $400.00." Moreover, the judgment of sentence does not require the payment of any "court costs." It orders defendant to pay (1) "68.00 x 2" ($136) for "State Minimum," i.e., the minimum state costs authorized under MCL 769.1j(1)(a), (2) $130 for "Crime Victim," i.e., the fee for crime victim's rights services authorized under MCL 780.905(1)(a), and (3) $600 for "Attorney Fees," i.e., reimbursement of "[t]he expenses of providing legal assistance to the defendant" as authorized under MCL 769.1k(1)(b)(*iii*) (now § 1k(1)(b)(*iv*)). These assessments add up to $866, the amount specified as the total. The space for "Court Costs" is blank. A court speaks through its written orders and judgments, not through its oral pronouncements. *People v Vincent*, 455 Mich 110, 123; 565 NW2d 629 (1997); *Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977). Consequently, because the judgment of sentence does not require defendant to pay court costs, there is no error to correct and no relief that can be granted.

## IV. ADMISSION OF DEFENDANT'S STATEMENTS

---

[3] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

[4] Currently, reasonable court costs are authorized by MCL 769.1k(1)(b)(*iii*), which was amended after the Supreme Court's decision in *Cunningham*. See *People v Konopka*, 309 Mich App 345, 357-359; 869 NW2d 651 (2015). However, this amended provision was not in effect at the time of defendant's sentencing on July 22, 2014. See *id.* at 357; 2014 PA 352.

Finally, in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant argues that one or more of her statements were improperly admitted at trial because the police continued to question her after she invoked her right to counsel. The issue as stated is not preserved because defendant did not move to suppress the statements before trial or object to the introduction of the statements at trial. *People v McCrady,* 244 Mich App 27, 29; 624 NW2d 761 (2000). Therefore, review is limited to plain error affecting defendant's substantial rights. *Id.*

"A statement obtained from a defendant during a custodial interrogation is admissible only if the defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights." *People v Akins,* 259 Mich App 545, 564; 675 NW2d 863 (2003). "[A] suspect in police custody must be informed specifically of the suspect's right to remain silent and to have an attorney present before being questioned." *People v Kowalski,* 230 Mich App 464, 472; 584 NW2d 613 (1998). If a defendant is advised of and invokes her right to counsel, "the interrogation must cease until an attorney is present." *Id.* (citation omitted). A defendant's invocation of the right to counsel requires a statement that can "reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis v United States,* 512 US 452, 459; 114 S Ct 2350; 129 L Ed 2d 362 (1994) (citation omitted).

The record shows that defendant made three statements while in custody, one on August 26, 2013, and two on August 27, 2013. Each of the first two statements were given after defendant was advised of her rights, acknowledged that she understood them, and agreed to waive them, as indicated in the advice-of-rights forms initialed and signed by defendant, which were admitted into evidence. Further, an officer who questioned defendant specifically testified that defendant never asked to speak to a lawyer. While defendant claims in her brief on appeal that she invoked her right to counsel at some point, this self-serving assertion is entirely unsubstantiated by the lower court record. Moreover, with respect to defendant's third statement, made spontaneously on August 27 while a police officer escorted defendant to her jail cell, this statement was a volunteered remark, and not the product of custodial interrogation, meaning we see no basis on which this remark might have been suppressed. See *People v Anderson,* 209 Mich App 527, 532; 531 NW2d 780 (1995); *People v O'Brien,* 113 Mich App 183, 192-193; 317 NW2d 570 (1982). Because the record does not show that defendant unequivocally and unambiguously invoked her right to counsel, defendant has not shown plain error and she was not entitled to the suppression of her statements.

Finally, we note that, on appeal, defendant raises several other challenges to the admission of her statements. However, defendant failed to include these additional arguments in her statement of the questions presented, meaning these matters have not been properly presented for our review and need not be considered. See MCR 7.212(C)(5); *People v Albers,* 258 Mich App 578, 584; 672 NW2d 336 (2003). Nonetheless, we have reviewed defendant's arguments and find them to be without merit. Nothing in the record supports a finding that defendant did not knowingly and intelligently waive her rights, that she invoked her right to remain silent, or that her statements were involuntary. *People v Daoud,* 462 Mich 621, 642; 614 NW2d 152 (2000); *People v Cipriano,* 431 Mich 315, 333-334; 429 NW2d 781 (1988); *People v Henry (After Rem),* 305 Mich App 127, 145; 854 NW2d 114 (2014).

We affirm defendant's convictions and remand for further proceedings regarding defendant's sentences in accordance with *Lockridge*. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto