[No. 55170-7.   En Banc.   April 13, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. KIMBERLY
COLLINS, *Petitioner*.

*Marc R. Lampson* of *Washington Appellate Defender
Association*, for petitioner.

*Seth R. Dawson, Prosecuting Attorney*, and *Seth Aaron
Fine, Deputy*, for respondent.

UTTER, J.—Petitioner Kimberly Collins seeks review of a
Court of Appeals decision upholding her conviction for
third degree assault. She argues that the trial judge vio-
lated prohibitions against double jeopardy developed in
*State v. Dowling*, 98 Wn.2d 542, 656 P.2d 497 (1983), when
he, upon reconsideration, reinstated the third degree

assault charge after orally dismissing it for want of evidence. We hold that the trial judge's reinstatement of the charge did not constitute double jeopardy and affirm the decision of the Court of Appeals which so held. *Dowling* is overruled to the extent that it conflicts with this opinion.

While in custody at the Snohomish County Jail, Ms. Collins bit a corrections officer on the wrist. The Snohomish County Prosecutor charged Ms. Collins with third degree assault under former RCW 9A.36.030(1)(a), which states, in part:

> Every person who, under circumstances not amounting to assault in either the first or second degree, shall be guilty of assault in the third degree when he:
> (a) With intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension or detention of himself or another person shall assault another . . .

During the trial, the defense moved to dismiss for lack of evidence at the close of the prosecutor's case. Defense counsel argued that the prosecution had not proved that Ms. Collins had the intent to escape or to resist lawful detention when she bit one of the officers. Therefore, according to defense counsel, the prosecution had not proved all of the elements of third degree assault. After argument from both sides, the trial judge gave an oral ruling of dismissal. It does not appear from the record that the judge made or signed a separate journal entry of this event. Minutes later, the prosecutor offered authority contrary to the judge's ruling, citing *State v. Jury,* 19 Wn. App. 256, 576 P.2d 1302, *review denied,* 90 Wn.2d 1006 (1978). After further discussion and argument on the impact of *Jury,* the trial judge reversed his first ruling. The trial continued and the case went to the jury, which returned a guilty verdict.

Ms. Collins appealed her conviction to Division One of the Court of Appeals. Along with other arguments, she contended that, under *State v. Dowling, supra,* the reinstatement of the assault charge after oral dismissal amounted to double jeopardy. The Court of Appeals, in an

unpublished opinion by Coleman, J., rejected all of Ms. Collins' arguments, distinguished *Dowling,* and upheld the conviction.

I

The central issue here is whether or not the trial judge's ruling was final when given orally. Only if that finality is established can protections against double jeopardy attach. We find that this ruling was not final and overrule the standard enunciated in *State v. Dowling, supra.*

In *Dowling,* this court held that a trial judge, sitting as a trier of fact, violated the prohibition against double jeopardy when he reversed his own previous oral order of dismissal made 4 months earlier. In so holding, we adopted a standard for determining the finality of a trial judge's ruling which, as the dissent in that case pointed out, represented a change in Washington law. As *Dowling* concerned a ruling by a trial judge sitting as the trier of fact, the "finality standard" was tailored to that situation. We held:

> A finding by the court as the trier of fact, without a jury, when read conclusively into the record in such a manner as to indicate that it is neither tentative nor made with reservation or advisement nor subject to further consideration or proceedings in the same case, will support a judgment of acquittal or dismissal.

98 Wn.2d at 547, quoting *State v. Bastinelli,* 81 Wn.2d 947, 956, 506 P.2d 854 (1973) (Hale, C.J., concurring).

This standard is at odds with the one noted by the *Dowling* dissent: that "a case is not finally terminated until either a journal entry or, more preferably, a formal order is entered by the trial court." 98 Wn.2d at 550 (Dolliver, J., dissenting). The *Dowling* dissent cited a number of cases for this proposition, among them *State v. Aleshire,* 89 Wn.2d 67, 70, 568 P.2d 799 (1977) and *State v. Mallory,* 69 Wn.2d 532, 533, 419 P.2d 324 (1966). Nonetheless, this court reaffirmed the *Dowling* standard in *State v. LeFever,* 102 Wn.2d 777, 690 P.2d 574 (1984).

The effect of the *Dowling* rule on past precedent has not always been clear. In *Mallory,* the trial judge in a bench

trial found the defendants guilty. On appeal, the defendants referred to the oral and memorandum opinions of the trial court. This court held that such earlier opinions may be considered in interpreting findings of fact and conclusions of law, but cannot be considered as the basis for the trial court's judgment and sentence. We stated further:

> A trial court's oral or memorandum opinion is no more than an expression of its informal opinion at the time it is rendered. It has no final or binding effect unless formally incorporated into the findings, conclusions, and judgment.

69 Wn.2d at 533–34. Because *Mallory* concerned the trial judge's function as trier of fact and the finality of that judge's oral opinions and rulings, it conflicts directly with *Dowling*.

*Aleshire* concerned a jury trial and addressed the issue of double jeopardy. The trial judge there took defendant's motion to dismiss (for failure to prosecute within the "speedy trial" standards) under advisement. The judge later wrote a letter to counsel concluding, "The case is dismissed." Three days later, the judge reversed himself and allowed commencement of a new trial. This court found that the letter did not represent the final judgment; therefore the defendant had not faced double jeopardy. Citing *Mallory* and *Chandler v. Doran Co.,* 44 Wn.2d 396, 267 P.2d 907 (1954), we held that a journal entry or a formal order would be necessary to end the case. We distinguished *State v. Bastinelli, supra,* upon which defendants relied, because it concerned a trial to the court on the merits. We emphasized that we could find no reason to change the *Mallory* rule "particularly where the issue was solely a procedural one." *Aleshire,* at 71.

Even though the present case involved a jury trial, the *Dowling* finality standard applies to the trial judge's ruling. While the trial judge here was not the finder of fact, his initial oral ruling went to the case's merits. In a motion to dismiss for insufficient evidence, the trial judge must consider whether a rational trier of fact would find guilt

beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 220, 616 P.2d 628 (1980). This consideration necessitates evaluating the evidence presented; the ruling is based on the sufficiency and persuasiveness of that evidence. The judge must face the ultimate question of the defendant's guilt or innocence regarding the elements of the offense for which she is charged. The trial judge here based his oral ruling on his evaluation of the evidence relating to the defendant's guilt: "Looking at all of the evidence most favorable to the State, I don't think the requirements of State versus Green are met, and I will dismiss regarding 3rd degree assault." Verbatim Report of Proceedings, at 100. In following the "rational trier of fact" standard, the judge acted as the trier of fact for the purposes of the motion. In acting in that capacity, he fell under the scope of *Dowling.* Because he read the ruling "conclusively into the record," it was final under the *Dowling* rule.

## II

The Court of Appeals did not find *Dowling* to be on point and instead followed *State v. McClelland,* 24 Wn. App. 689, 604 P.2d 969 (1979), *review denied,* 93 Wn.2d 1019 (1980). In *McClelland,* the Court of Appeals found a trial judge's apparent dismissal ("[i]t would be my decision that the matter be dismissed") to be tentative and merely an indication of the judge's thinking process when he reconsidered and reversed it before recess or adjournment. 24 Wn. App. at 692. Petitioner argues that *Dowling* overrules *McClelland sub silentio.* While this is a possibility, it is also possible to distinguish the two. The reversal of the oral ruling in *McClelland* came after continued argument, before the adjournment of the day's proceedings. In *Dowling,* the reversal came 4 months later. More importantly, the *McClelland* trial judge's choice of language shows that the intended finality of his "ruling" was questionable. By contrast, this court found the *Dowling* judge's ruling final because it was "read conclusively into the record."

■ While it is possible to distinguish these cases, this very possibility reveals the serious shortcomings with the *Dowling* rule. Much of the determination comes down to after–the–fact analysis of subtle distinctions preserved in the record of the proceedings. The outcome of something as important as deciding whether a defendant was exposed to double jeopardy should not hang on such guesswork. Reliance on this rule cannot provide clear guidance to trial judges and can lead to inconsistent appellate decisions such as the ones cited above. To serve the ends of certainty, reliance on the final written court order or written journal entry to determine the finality of a ruling is the better rule.

In this vein, our reference in *Mallory* to the trial court's oral opinion as "no more than an expression of its informal opinion at the time it is rendered" is relevant here. Individual trial judges' styles of ruling vary. Many judges will think out loud along the way to reaching the final result. It is only proper that this thinking process not have final or binding effect until formally incorporated into the findings, conclusions, and judgment.

For this reason, we overrule the standard developed in *Dowling* and followed in *LeFever* for determining the finality of a trial judge's oral ruling. We return to the rule long followed in this state that a ruling is final only after it is signed by the trial judge in the journal entry or is issued in formal court orders. *See State v. Aleshire, supra; State v. Mallory, supra; Chandler v. Doran Co., supra; State v. McClelland, supra.*

The trial judge in the present case did not even approach signing a journal entry or issuing a formal signed order. The record indicates that he stated one position, albeit in language that reflected a ruling, in light of the authority presented by counsel. The argument of counsel, however, did not end there. The prosecutor introduced new, contrary authority, further argument followed, and the judge reversed his original position. Although the "reversal" took place within a very short time—probably 10 minutes—the lapse of time is irrelevant to the rule we follow. Only after

the signed journal entry is made or the signed order is issued will the ruling be final. A lapse of 4 months or of 10 minutes makes no difference.

We therefore affirm the decision of the Court of Appeals and uphold the conviction of Ms. Collins for third degree assault.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.

DORE, J. (dissenting)—The majority argues that the defendant's right not to be placed in double jeopardy should not turn on "guesswork." That is a gross mischaracterization of the standard we defined in *State v. Dowling*, 98 Wn.2d 542, 656 P.2d 497 (1983), and it misrepresents that standard's application to this case. *Dowling* states a clear and reliable standard for determining when a defendant has been acquitted for double jeopardy purposes. In the absence of a compelling showing that *Dowling* is wrong, the majority's overruling *Dowling* cannot be justified.

## STARE DECISIS REQUIRES US
## TO ADHERE TO DOWLING

The rule of stare decisis requires us to stand by our decisions unless there are compelling reasons why we should not do so. For example, in *State v. Stevick*, 23 Wn.2d 420, 161 P.2d 181 (1945) and *State v. McDaniels*, 30 Wn.2d 76, 190 P.2d 705 (1948), we held that proof of ordinary negligence would suffice to support a conviction for negligent homicide. We were persuaded in *State v. Partridge*, 47 Wn.2d 640, 289 P.2d 702 (1955), however, that the Legislature clearly meant to require a showing of recklessness as an element of that crime. We stated:

> We hesitate to overrule cases which have been in the books for some length of time, yet when we are confronted with a problem and are convinced that we have been wrong, it is our duty to do so.

47 Wn.2d at 645.

The cases overruled in *Partridge* were clearly wrong and were shown to be so in a carefully reasoned opinion. Here, in contrast, there has been no showing that our prior decision is clearly wrong. As demonstrated below, the majority supports its conclusion only by grossly overstating the difficulties associated with applying *Dowling*.

Nor has there been any showing that subsequent cases have exposed weaknesses or inconsistencies in *Dowling*. In this regard the case can be contrasted with *United States v. Jenkins*, 420 U.S. 358, 43 L. Ed. 2d 250, 95 S. Ct. 1006 (1975). In *Jenkins,* the Supreme Court held that the double jeopardy clause prevented the government from appealing a dismissal of criminal charges even if granted at the defendant's motion on grounds unrelated to guilt or innocence. Subsequent to *Jenkins,* however, the Court held in several cases that the clause did not bar retrial or appeal where dismissal had been obtained on a variety of grounds short of mistrial. *See Lee v. United States,* 432 U.S. 23, 53 L. Ed. 2d 80, 97 S. Ct. 2141 (1977); *Serfass v. United States,* 420 U.S. 377, 43 L. Ed. 2d 265, 95 S. Ct. 1055 (1975). Therefore, within a few years the Supreme Court overruled *Jenkins* because these subsequent cases demonstrated that its rule was not sound. *United States v. Scott,* 437 U.S. 82, 95, 101, 57 L. Ed. 2d 65, 98 S. Ct. 2187 (1978).

There has been no such showing here. On the contrary, we have relied on *Dowling* at least once with no difficulties and without expressing reservations. *State v. LeFever,* 102 Wn.2d 777, 690 P.2d 574 (1984).

### DOWLING INDICATES A CLEAR DEFENSIBLE RESULT

The main reason the majority gives for overruling *Dowling* is that it requires "after–the–fact analysis of subtle distinctions preserved in the record of the proceedings." Majority, at 308. Just as a preliminary point, the same is true of almost every decision we make. If the need for meticulous evaluation of the record is a defect in standards

of appellate review, then much of this court's work is suspect.

More to the point, it is clear the majority grossly overstates the difficulties involved in applying the *Dowling* standard. *Dowling* defines when a criminal defendant has been acquitted and may not be placed in jeopardy again:

> A finding by the court as the trier of fact, without a jury,[1] when read conclusively into the record in such a manner as to indicate that it is neither tentative nor made with reservation or advisement nor subject to further consideration or proceedings in the same case, will support a judgment of acquittal or dismissal.

98 Wn.2d at 547 (quoting *State v. Bastinelli*, 81 Wn.2d 947, 950, 956, 506 P.2d 854 (1973) (Hale, C.J., concurring)). We derived this rule from the well established principle that, when an appellate court reverses a conviction based on insufficient evidence, a retrial is not permissible. 98 Wn.2d at 544. *See Hudson v. Louisiana*, 450 U.S. 40, 67 L. Ed. 2d 30, 101 S. Ct. 970 (1981); *Burks v. United States*, 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978). A trial court cannot grant, by way of a motion to reconsider, what the State cannot obtain from this court on appeal. 98 Wn.2d at 545.

Whatever speculative difficulties the majority may have in mind in its appraisal of *Dowling*, they are not present in this case. The application of the rule to this record is simple and straightforward. Contrary to the majority's representation, the trial judge did not merely state "a position" in "language that reflected a ruling." He ruled.

> [The Court]: Counsel, I can't see anything else but she prevented her own restraint, physical restraint within the drunk tank, per se. In her activity of striking out at one time, outside the attorney's room, it would appear to be, again, hostile assault, but not in the sense of prevention of detention; it was just an assault per se. Looking at all of the evidence most favorable to the State, I don't think

---

[1]As the majority acknowledges, the *Dowling* standard applies to this case, despite the fact that trial was by jury, because the trial court evaluated the evidence in the course of finding that the State had not met its burden of presenting evidence. Majority, at 306–07.

the requirements of State versus Green [94 Wn.2d 216, 616 P.2d 628 (1980)] are met, and I will dismiss regarding 3rd degree assault. Do you want some time to consult with each other regarding the other two matters?

Report of Proceedings, at 100. The judge summarized the relevant evidence, stated the applicable legal standard, applied that standard to the facts, stated a conclusion and moved on to the next issue. No subtle analysis or guesswork is needed to identify such a statement as a clear, unambiguous ruling.

Furthermore, not only did the trial court make an unequivocal ruling, the State recognized it as such. In making the motion to reconsider, counsel for the State began by saying:

[Counsel]: Your Honor, I realize you have ruled, but I would like to draw your attention to *State v. Jury,* [19 Wn. App. 256, 576 P.2d 1302, *review denied,* 90 Wn.2d 1006 (1978)] . . .

Report of Proceedings, at 101.

In short, the trial court's ruling that the State had not met its burden was "neither tentative nor made with reservation or advisement nor subject to further consideration . . ." 98 Wn.2d at 547. Under *Dowling,* Collins was acquitted at the moment the decision was announced, and the State's motion for reconsideration simply could not be granted without running afoul of the prohibition on double jeopardy. There is no "guesswork" involved in reaching this conclusion. The majority overstates the difficulties associated with applying the *Dowling* rule because it is bent on overruling it.

### THE TRIAL COURT'S DECISION ACQUITTED COLLINS EVEN IF IT WAS INCORRECT

The majority also argues that, while the trial judge stated his ruling "albeit in language that reflected a ruling" it was not a ruling because he heard further argument and changed his mind. Majority, at 308. This, like the argument refuted above, is meant to suggest that *Dowling* is indefinite and difficult to apply. In fact, it amounts to saying that

the trial court had the power to grant a motion to reconsider because it granted a motion to reconsider—which plainly begs the question.

The question before us is whether the trial court could proceed at all beyond the point at which it determined that the State had not met its burden. If the defendant was acquitted at that point, the court could proceed no further without placing her in double jeopardy. To say that the trial court *did* so proceed is no argument for the proposition that it did so *properly*.

The majority's argument sounds plausible only because the trial court's initial decision to dismiss apparently was incorrect. It is well established, however, that double jeopardy is prohibited even where the defendant has been acquitted in error. For double jeopardy purposes, an acquittal is defined as: "a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 51 L. Ed. 2d 642, 97 S. Ct. 1349 (1977).

For example, in *Fong Foo v. United States*, 369 U.S. 141, 7 L. Ed. 2d 629, 82 S. Ct. 671 (1962), the trial court interrupted the questioning of the government's fourth witness and directed a verdict of acquittal on the ground that the government's witnesses were not credible and because the United States Attorney allegedly had committed prosecutorial misconduct. The Court of Appeals reversed. The Supreme Court, however, reinstated the original judgment of acquittal:

> The trial did not terminate prior to the entry of judgment, as in *Gori* v. *United States,* 367 U. S. 364 [6 L. Ed. 2d 901, 81 S. Ct. 1523 (1961)]. It terminated with the entry of a final judgment of acquittal as to each petitioner. The Court of Appeals thought, not without reason, that the acquittal was based upon an egregiously erroneous foundation. Nevertheless, "[t]he verdict of acquittal was final, and could not be reviewed . . . without putting [the petitioners] twice in jeopardy, and thereby violating the Constitution." *United States* v.

*Ball,* 163 U. S. 662, 671 [41 L. Ed. 300, 16 S. Ct. 1192 (1896)].

369 U.S. at 143.

The same reasoning applies here. If the trial court committed an error in ruling that the State had not proven its case against Collins—an error far less obvious than that in *Fong Foo*—the State could not remedy that error by a motion to reconsider. The consideration of that motion itself, like an appeal, would constitute double jeopardy. The fact that the trial court recognized its own mistake has no bearing on the effect of its earlier ruling. Regardless of the brief period of time intervening between the trial court's ruling and the State's motion, Collins was acquitted at the time the court first ruled, and was beyond the power of the State. The acquitted defendant is an innocent woman and cannot be made guilty by the majority.

CONCLUSION

We are justified in overruling our prior cases only when we have clearly been wrong, as demonstrated by subsequent experience or intervening case law. The majority's exaggerated account of the difficulties in applying *Dowling* do not constitute such a showing. Since, under *Dowling,* Collins was acquitted at the time the trial court granted the State's motion to reconsider and continued with the trial, I would reverse the conviction and dismiss the information.