FILED
NOVEMBER 16, 2017
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MELODY SECCO (nka HAYNES), | ) | |
| | ) | No. 34050-3-III |
| Respondent, | ) | (consolidated with |
| | ) | No. 34698-6-III) |
| v. | ) | |
| | ) | |
| GORDON SECCO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — In successive and consolidated appeals, Gordon Secco

challenges the superior court's denial of his motions to vacate orders entered in this

proceeding to dissolve his marriage to Melody Haynes (formerly Melody Secco). His

first appeal assigns error to the denial of his motion under CR 60(b)(5) to vacate an order

of default he contends was void for lack of personal jurisdiction. The second assigns

error to the court's denial of a subsequent motion under CR 60(b)(4) and (9) to vacate the

order on the basis of fraud or his inability to defend as the result of an unavoidable misfortune.

The first appeal is dispositive. Mr. Secco overcomes the presumption that the court had jurisdiction to enter the decree and final orders. Ms. Haynes is unable to demonstrate an honest and reasonable effort to personally serve Mr. Secco before seeking approval for service by mail. We reverse and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

Melody Secco petitioned for a dissolution of her marriage to Gordon Secco on February 4, 2014. Two months later, on April 2, she moved the court for an order allowing her to serve him by mail. Using a superior court form, her lawyer included the required averments that Mr. Secco "cannot be found in this state" and that Ms. Haynes had not been able to locate or serve him because he "has concealed himself/herself to avoid service of summons." Clerk's Papers (CP) at 13-14. As facts supporting these averments, counsel stated, "Service has been attempted 7 times by 2 different authorities and have been unsuccessful," and, as efforts made to locate Mr. Secco, stated "5 attempts by Spokane County Sheriff's Department. 2 attempts by ____ ." CP at 14.

The motion was also supported by a sheriff's return of service stating that "[a]fter diligent search and inquiry" the signatory deputy sheriff had been unable to serve Gordon Secco at 8010 E. Augusta Avenue in Spokane Valley (the couples' home address),

2

indicating "five attempts made." CP at 17. A further declaration from Mark Cavadini,

who described himself as a friend of Ms. Haynes, declared:

> Try to serve paper on the following date
> Feb 18, 2014 at time of 3:00 pm
> Feb 19, 2014 at time of 1:30 pm
> Feb 20, 2014 at time of 2:00 pm
> At Every attempt I could hear noise inside of the house, But no answer!
> Address 8010 E. Augusta Ave. Spokane, WA

CP at 15.

Undisclosed in the declarations was the fact that Ms. Haynes continued to reside at

the couple's home at least part time during the early February to early April time frame

when service of process was being attempted. According to Mr. Secco, during that time,

"I shared the same home with [Ms. Haynes]. Not only did we share the same home, but

we slept in the same bed." CP at 87. Ms. Haynes claims that for the most part she was

staying with her daughter or in a rental home owned by her ex-husband during that time

frame, but she admits to staying at her and Mr. Secco's home once or twice a week. The

"once or twice a week" estimate was corroborated by Ms. Haynes's daughter, who

testified that her mother stayed at the couple's home at her divorce lawyer's insistence,

evidently in the belief it would advance her legal position in the property division.

CP at 160.

An ex parte order allowing service by mail was entered by a court commissioner

on April 7. According to a declaration filed by Ms. Haynes's lawyer, he served Mr.

3

Secco by mail the next day. Ms. Haynes claims to have stayed away from the couple's home during the time the substitute service was being effected, so there could be no suggestion that she diverted papers mailed to Mr. Secco at their home address. Mr. Secco nonetheless claims he never received them.

On July 9, 2014, Ms. Haynes moved for and was granted an order of default.

Six weeks later, on the morning of August 22, Mr. Secco and Ms. Haynes were both at the couple's home before going to work when Mr. Secco slammed a door into Ms. Haynes's foot, breaking a bone. She claims he engaged in an extended assault that began with pushing her down the stairs and concluded with his slamming her foot in the door and then choking her. Mr. Secco claims her foot was injured accidentally, when Ms. Haynes, and then he, pushed the door into the other during an argument. Ms. Haynes initially went to work but was taken to the hospital by a coworker, and hospital personnel reported the domestic violence assault to police. By 9:17 a.m. that morning, a deputy sheriff located Mr. Secco at his place of work and arrested him.

Mr. Secco was charged with second degree assault and unlawful imprisonment. While Mr. Secco was in custody awaiting trial, Ms. Haynes noted presentment of a final divorce decree for October 27. Notwithstanding the default order, her lawyer arranged for service of the materials to be presented on Mr. Secco at the correctional facility where he was detained. Mr. Secco claims this is when he first learned of the divorce action. According to Mr. Secco, after being served at the correctional facility, he attempted to

4

contact two attorneys but having no access to funds, he was unable to pay a retainer. He also claims to have tried to make bail, but bail bond companies considered him a flight risk since he is a Canadian citizen.

At the presentment on October 27, the trial court entered findings of fact and conclusions of law and signed the final decree of dissolution. Ms. Haynes requested and was awarded the entire interest in the couple's home, which Mr. Secco contends was their most significant asset. The final orders were mailed to Mr. Secco on November 10.

Mr. Secco was acquitted of the domestic violence charges and released from incarceration on January 21, 2015.

In August 2015, seven months after he was acquitted and released, Mr. Secco filed a motion to show cause why the order of default should not be vacated, arguing that the trial court never acquired personal jurisdiction over him and the default and later orders were void under CR 60(b)(5). A court commissioner denied the motion, commenting in her oral decision on Mr. Secco's delay in seeking relief and his failure to take action in response to the materials he admitted receiving in October 2014. The written order prepared by counsel and entered by the court said nothing about delay, however, stating instead that "[s]ervice was properly effectuated and [Mr. Secco] failed to present a compelling reason as to why this matter should be vacated." CP at 166. A motion for revision was filed and denied, with the superior court stating only, "I'm going to decline

5

to revise the commissioner." Report of Proceedings (RP) (Dec. 3, 2015) at 23. Mr. Secco filed his first appeal.

Five-and-a-half months later, with the first appeal pending, Mr. Secco sought a second order to show cause why the default decree of dissolution should not be vacated, this time relying on CR 60(b)(4) (providing relief for "[f]raud . . . , misrepresentation, or other misconduct of an adverse party") and CR 60(b)(9) (providing relief for "[u]navoidable casualty or misfortune preventing the party from . . . defending"). CP at 218. The trial court denied the motion, questioning Mr. Secco's right to bring serial CR 60 motions but also finding a lack of evidence of all nine elements of common law fraud.

Mr. Secco filed his second appeal. We consolidated it with the first.

## ANALYSIS

Mr. Secco's first appeal, assigning error to his motion to the denial of his motion to vacate the trial court's orders and judgment as void, is dispositive. There is no need to address the second.

Service of process by means other than personal service, i.e., constructive and substitute service, "is in derogation of the common law and cannot be used when personal service is possible." *Rodriguez v. James-Jackson*, 127 Wn. App. 139, 143, 111 P.3d 271 (2005). "When the defendant cannot be found within the state," however, and an affidavit is filed asserting that fact and other prerequisites, the court may authorize service by publication. RCW 4.28.100. By court rule, if the circumstances justify

6

service by publication and the serving party files an affidavit stating facts from which the

court determines that service by mail is just as likely to give actual notice as service by

publication, the court may order service by mail. CR 4(d)(4).

Strict compliance with the statute authorizing service by publication is required for

either type of substitute service. Compliance in this case required two things, the first

being that Mr. Secco could not be found within the state *in fact*, which is established by

demonstrating Ms. Haynes's honest and reasonable effort to locate him for service before

seeking service by mail. *Dobbins v. Mendoza*, 88 Wn. App. 862, 871, 947 P.2d 1229

(1987). Compliance also required a sufficient affidavit from Ms. Haynes or on her

behalf, averring that (1) after a diligent search, Mr. Secco could not be found in

Washington; (2) he was a resident of Washington; and (3) he either left the state or

concealed himself within it, with the intent to defraud creditors or avoid service of

process. *Pascua v. Heil*, 126 Wn. App. 520, 526, 108 P.3d 1253 (2005); RCW

4.28.100(2). To ensure that substitute service is being used only as a last resort, the

affidavit must provide the specific facts supporting the required assertions, not

conclusory statements, and the authorizing judge must closely scrutinize the facts

provided rather than merely serving as a rubber stamp. *Pascua*, 126 Wn. App. at 527-28.

When allegedly defective substitute service is followed by entry of an order of

default and default judgment, the defendant may move to set aside the judgment as void

for lack of personal jurisdiction. CR 60(b)(5); *Vukich v. Anderson*, 97 Wn. App. 684,

7

686, 691, 985 P.2d 952 (1999). When there is a recital in a default judgment that proper service of process has occurred, a presumption of jurisdiction arises, but it can be overcome. *Brenner v. Port of Bellingham*, 53 Wn. App. 182, 186, 765 P.2d 1333 (1989) (citing *Burns v. Stolze*, 111 Wash. 392, 395-96, 191 P. 642 (1920)). Once overcome, the burden shifts to the plaintiff to produce evidence that a reasonable search was made. *Id.* at 187. If service was not proper, dismissal is required even where a defendant has actual notice of the lawsuit. *In re Marriage of Logg*, 74 Wn. App. 781, 784, 875 P.2d 647 (1994). There is no time limit to bring a motion to vacate a void judgment. *Servatron v. Intelligent Wireless Prods., Inc.*, 186 Wn. App. 666, 679, 346 P.3d 831 (2015).

Because courts have a mandatory, nondiscretionary duty to vacate void judgments, a trial court's decision to grant or deny a motion to vacate a default judgment for want of jurisdiction is reviewed de novo. *Ahten v. Barnes*, 158 Wn. App. 343, 350, 242 P.3d 35 (2010). The issue before the court in a *postjudgment* CR 60(b) motion is not the sufficiency of the original affidavits but "what *in fact* did the plaintiff do before seeking [substitute] service." *Brennan v. Hurt*, 59 Wn. App. 315, 319, 796 P.2d 786 (1990). What in fact happened can be supported by supplemental affidavits. *Id.* This is unlike the situation where the defendant specially appears and makes a *prejudgment* challenge to allegedly improper service of process; in that case, the original affidavits alone are reviewed for sufficiency. *E.g.*, *Parkash v. Perry*, 40 Wn. App. 849, 851-53, 700 P.2d 1201 (1985).

8

Our dissenting colleague finds this difference in procedure between prejudgment and postjudgment challenges anomalous, but it makes sense given the stakes at issue. If a defendant specially appears but defends on the basis of insufficient service, he or she is aware of the litigation and able to defend. The inquiry therefore ends with a review of whether the plaintiff's submission in support of substitute service was facially defective, establishing that the trial court erred in authorizing it. The stakes for the defendant do not justify looking beyond the submission to determine whether the plaintiff in fact fully discharged the duty to attempt personal service.

By contrast, when a default judgment has been entered that will deprive the defendant of the opportunity to be heard on the merits unless set aside, the stake for the defendant—due process—warrants looking at whether the circumstances justified substitute service *in fact.*

Since the prerequisite to disfavored substitute service is that the "defendant cannot be found within the state," RCW 4.28.100, the first inquiry for the court presented with a postjudgment challenge to substitute service is whether the defendant really could not be found. A central theme of cases that address when it is fair to say a defendant cannot be found in Washington is "'that while not all conceivable means of personal service have to be exhausted before service by publication is authorized, there must have been an honest and "reasonable effort" to find the defendant.'" *Brenner*, 53 Wn. App. at 186 (quoting *Longview Fibre Co. v. Stokes*, 52 Wn. App. 241, 245, 758 P.2d 1006 (1988)).

9

This includes following up on any information possessed that might reasonably assist in locating a defendant. *Id.*

Mr. Secco has never contended that because Ms. Haynes resided part time in the couple's home, she could have served him—he acknowledges that as a party she could not effect proper service. But as he testified in support of his first motion to vacate the default, "Since we lived in the same house and [Ms. Haynes] was also aware of my work schedule, if she wanted to get me served all she had to do was have a friend, process server or sheriff's office[r] come over at a time that she knew I was going to be home, or have them serve me at a time she knew I was going to be at work." CP at 87. As he argued in his briefing in the trial court, "All she had to do is bring a process server with her on one of the nights that she was staying [at the home], or open the door for service of process to be effectuated." CP at 196. These are valid points that were unanswered in the trial court. That Mr. Secco was found at work and arrested at 9:17 a.m. on August 22 is evidence of just one of the service alternatives open to Ms. Haynes and her lawyer.

An honest and reasonable effort includes not only following up on available information, it also means following up on available ways of personally contacting a defendant. If the objective was truly to accomplish personal service, not simply to create a paper trail, a reasonable party would have pursued one of the simple and obvious alternatives for personally contacting Mr. Secco. Ms. Haynes did not offer any reason for

10

her failure to attempt these other means of service, never providing testimony that they

would have exposed her to danger as speculated by the dissent.[1]

Since Ms. Haynes did not meet her burden of demonstrating an honest and

reasonable effort to serve Mr. Secco, there is no need to reach the issue of his behavior.

---

[1] The record belies speculation that Ms. Haynes believed in February and March 2014 that providing more assistance in serving her husband would have placed her in danger. Mr. Secco filed a transcript of her January 20, 2015 testimony at his criminal trial for the assault she alleged occurred five to six months after the attempts at service. She testified:

Q.     . . . [H]ow did the marriage fall apart?

A.     It was gradual. He's a very negative person, kind of hard to be around. He's an angry person. We kind of fell apart, didn't have really anything in common. I didn't like being around him anymore, just wanted to be by myself.

Q.     When did that start to happen that you wanted to be by yourself?

A.     Over a year ago, maybe like the summer of '13.

Q.     Okay. Now, you said there were anger issues and stuff like that. Was the marriage ever violent before—

A.     No.

Q.     —this incident?

A.     No.

Q.     Okay. No issues there for you in terms of—

A.     No.

Q.     —violence? Okay. So just personality clashes?

A.     Yes.

Q.     Is that fair to say?

A.     Yes.

CP at 258-59.

11

Whether Mr. Secco received the summons and complaint that was allegedly mailed also need not be addressed; it is irrelevant. The trial court erred in concluding that it had personal jurisdiction over Mr. Secco. The judgment should have been vacated as void.

Mr. Secco also assigns error to the application by the court commissioner of the wrong legal standard to his CR 60(b)(5) motion, pointing to the commissioner's discussion during her oral ruling of his failure to take earlier or different action. Since the superior court denied the revision motion without findings, conclusions, or an oral explanation, we deem the commissioner's findings and conclusions to have been adopted by the trial court. *See In re Marriage of Williams*, 156 Wn. App. 22, 27-28, 232 P.3d 573 (2010).

As noted earlier, there is no time limit to bring a motion to vacate a void judgment. The commissioner's oral comments suggesting she was mistakenly concerned about delay may have been no more than a thinking process. Her oral reasoning has no final or binding effect since no finding of delay was incorporated into findings, conclusions and a judgment or order. *State v. Collins*, 112 Wn.2d 303, 308, 771 P.2d 350 (1989). We review the commissioner's order, not its oral ruling.

In conclusion, when a party seeks to provide notice of its lawsuit through disfavored substitute service, and necessarily does so ex parte, it can be required, later, to prove that it first honestly and reasonably tried to personally serve the defendant. The focus will be on its good faith effort, not on whether it was unreasonable for the

12

defendant to refuse to respond to a knock at the front door. Parties seeking to use substitute service should govern themselves accordingly.

The order of default, findings, conclusions and decree are reversed and the matter is remanded for further proceedings.[2]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

I CONCUR:

_____
Lawrence-Berrey, A.C.J.

---

[2] Ms. Haynes seeks an award of attorney fees and costs on the basis that Mr. Secco has been intransigent. We find no intransigence and deny the request.

13

No. 34050-3-III (consolidated with No. 34698-6-III)

KORSMO, J. (dissenting) — The governing law most likely is as my learned colleagues state that it is, but it should not be so. The current approach rewards those who attempt to evade service and imposes extra obligations on those attempting to serve the unwilling. Another unsettling aspect of this approach is to put this court in the position of being a fact-finder and determining facts differently than the trial court did. If this is what the law requires, it is time to do things differently.

The wife presented ample evidence that the husband evaded service. Two of their neighbors were regular witnesses to the service efforts and the husband's subsequent visit to the mailbox after the server had left the premises; they could hear the server's pronouncements about his reasons for being there. Clerk's Papers (CP) at 145-148. It is difficult to imagine that the husband did not. A person inside the house during one service effort likewise provided a declaration that the husband was aware of the presence of the process server due to a driveway alert device and had his guest (the declarant) remain silent until the server was gone. The husband advised his guest that "Mel is trying to serve me." The two men even dropped to their knees in order to not be observed. CP at 149-150. The husband's declaration to the contrary rings quite hollow.

Having considered this evidence, a court commissioner and, on revision, a superior court judge, concluded that service by mail was proper. I agree and would affirm on that basis. However, the majority says that because the matter proceeded to a default judgment, the focus must change from the reasons that service by mail was proper to whether or not additional efforts at personal service could have been attempted with some possibility of success despite Mr. Secco's repeated efforts to avoid being served. That is a disconnection in logic that my simple mind cannot follow. Moreover, this change in focus effectively collaterally attacks the decision to permit service by mail by requiring the plaintiff to come up with additional evidence to justify the service by mail. That also makes no sense to me. Once the service by mail statute was satisfied, there is no reason to undermine that statute's purpose by requiring additional justification for using the statute by showing that other methods of attempting personal service would have been unavailing.

The majority also appears to accept as true Mr. Secco's unproven allegation that he never received the service paperwork mailed to him. He claims to have never received it, but there is no evidence to support that claim (mail returned to sender, etc.). On this record, it appears that a trier-of-fact would have severe reasons to doubt his assertions and the superior court, understandably, never found that he did not receive the mailing.

2

Why the majority finds this contention believable is beyond me. More importantly, I do not understand fact-finding to be an appellate function.[1]

Although probably not necessary to this dissent, I do want to take issue with the contention made by the husband in argument and acknowledged by the majority, at page 9, that the wife could have facilitated service by arranging to be present and letting the process server into the house. I imagine this suggestion will send chills down the back of many victim advocates. Seldom is a strained domestic relationship more volatile than when one party is served with dissolution or protection order paperwork. *See, e.g.,* *Washburn v. City of Federal Way*, 169 Wn. App. 588, 283 P.3d 567 (2012), *aff'd*, 178 Wn.2d 732, 310 P.3d 1275 (2013) (affirming liability against city for murder committed when process server left victim alone with killer after serving protection order). Whether or not Mr. Secco presented a genuine threat to his wife, the suggestion that such a risk

---

[1] *See State v. Hill*, 123 Wn.2d 641, 644-645, 870 P.2d 313 (1994) (rejecting line of authority permitting appellate courts to undertake independent review of the evidence). We do not weigh the evidence under any circumstance. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959); *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). We similarly do not substitute our judgment for that of the trier of fact. *Hesperian*, 54 Wn.2d at 575.

3

must be undertaken to serve someone who has been resisting service should be rejected as a matter of public policy.[2]

Viewing this record in a light most favorable to the judgment below, as I think we should be doing, we have the following facts: (1) Mr. Secco eight times evaded service by people he knew were trying to serve dissolution paperwork; (2) Mr. Secco received the documents in the mail; (3) Mr. Secco did not appear in the action; (4) Mr. Secco was even served with notice of the default hearing, but did not contact the court to explain his inability to appear. Why these facts, alone or in combination, require vacation of the judgment is a mystery to me. The fact that he can hypothesize other methods of personal service that possibly might have been effective is no basis, in my mind, for forcing the plaintiff to try to establish how Mr. Secco would have been unable to avoid service if those other avenues had been attempted. She should not bear that burden.

---

[2] The remaining suggestion that Mr. Secco should have been served at work, just as he was arrested there many months after evading service at home, is not supported by any evidence. The record is devoid of evidence that Mr. Secco would not have been able to continue to avoid service at work. Would his employer have permitted a process server on the premises? Would the business have been disrupted? Did he work at a location a process server could reach without assistance of management? I would put the burden on Mr. Secco, who contends this was a viable method of service, of establishing that fact. In light of his ongoing efforts to avoid service to that point, there is no reason to think this method would have been effective. I also suspect that most people other than Mr. Secco would rather not be served in the presence of fellow employees.

I would hold that when a plaintiff shows that a defendant is purposely evading service, the burden falls on the defendant to prove that the plaintiff had more reasonable means of serving him that also would have overcome his best efforts at evasion. If we do anything less, we simply reward bad behavior and render our courts less accessible to those who cannot afford to pay for around the clock efforts at serving a reluctant party.

Since our case law appears to create incentives for defendants to evade reasonable efforts at service by increasing costs and requiring more effort from plaintiffs, I respectfully dissent.

_____
Korsmo, J.