# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49191-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| EDWIN ALEJANDRO LIZARRAGA-CANCHE, | |
| Appellant. | |

MAXA, A.C.J. – Edwin Lizarraga-Canche appeals his convictions of possession of a stolen motor vehicle and bail jumping.

We hold that (1) the trial court properly admitted statements Lizarraga-Canche made to an arresting officer even though his *Miranda*[1] rights were read to him in English rather than in Spanish, his native language; (2) the trial court's decision to allow the State to reopen its case regarding Lizarraga-Canche's bail jumping charge after orally dismissing that charge did not violate double jeopardy; (3) the prosecutor did not misstate the law regarding either charge's knowledge requirement; (4) even assuming that the prosecutor misstated the State's burden of proof, Lizarraga-Canche waived his prosecutorial misconduct claim by failing to object; and (5)

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Lizarraga-Canche did not receive ineffective assistance of counsel regarding defense counsel's failure to object to the prosecutor's arguments.

Accordingly, we affirm Lizarraga-Canche's convictions.

FACTS

*Detention and* Miranda *Rights*

Lizarraga-Canche was driving a car when he was stopped by Vancouver police officer Kathryn Endresen. After a second officer determined that the car had been stolen, Endresen detained Lizarraga-Canche and placed him in her patrol vehicle.

Endresen read Lizarraga-Canche his *Miranda* rights from a department-issued card. When she finished, Lizarraga-Canche stated that he had not heard her because the patrol vehicle's radio was too loud. Endresen turned off the radio and again read the same statement. Lizarraga-Canche stated that he could hear Endresen and that he knew his rights, but that he did not want to talk to her.

Endresen noted that Lizarraga-Canche spoke with an accent, and he said that he spoke Spanish. She asked him if he was comfortable speaking English and he said he was "fine with it." Report of Proceedings (RP) at 54.

Endresen then obtained statements from Lizarraga-Canche about how he acquired the car.[2] The State eventually charged him with possession of a stolen motor vehicle.

---

[2] Although Lizarraga-Canche initially told Endresen that he did not want to talk to her, he did not argue in the trial court that Endresen was required to stop asking questions.

No. 49191-5-II

*Bail Jumping Charge*

Lizarraga-Canche was arraigned and the trial court scheduled a pretrial readiness hearing for April 7, 2016. An interpreter attended the arraignment to translate the proceedings into Spanish for Lizarraga-Canche. However, Lizarraga-Canche was not present for the April 7 hearing. As a result, the State amended its charging information to add a charge for bail jumping.

*CrR 3.5 Hearing*

Before trial, Lizarraga-Canche moved under CrR 3.5 to suppress the statements he made to Endresen. He emphasized that he was a native Spanish speaker and that his *Miranda* rights were read to him in English.

Endresen testified as recited above about her interaction with Lizarraga-Canche while reading his rights. She stated that she had called an interpreter when talking to a Spanish speaker in previous situations and that she would have done so for Lizarraga-Canche if he had indicated that he was unable to speak or understand English. However, she was confident that he was able to understand. She further stated that, even though she was talking with him in English, she could not remember any point at which he stopped her and asked her to explain something.

The second officer also testified that he overheard Lizarraga-Canche speaking English with Endresen. The officer stated that he spoke once to Lizarraga-Canche in English, and Lizarraga-Canche had no trouble understanding and responded in English.

Lizarraga-Canche testified through an interpreter about both his familiarity with English generally and his understanding of his rights when he was questioned. He stated that he had lived in Mexico until 2002, when at the age of 17 he moved to the United States. Although his

first language was Spanish, he spoke both Spanish and English to his friends and watched television in both languages. He had also lived with a woman who was a native English speaker for two years from 2004 to 2006.

The trial court ruled that Lizarraga-Canche's statements were made after he was read his *Miranda* rights and that his statements would be admissible. The court found that Lizarraga-Canche had lived in the United States for 13 years, that he had lived with an English speaker, that both officers observed him speaking English, and that he said he was fine speaking in English. The court further found that Lizarraga-Canche said he understood his *Miranda* rights when they were read to him. The court explained that at some point the State was entitled to rely on Lizarraga-Canche's statements that he understood what the officers were saying. The court did not enter written findings of fact and conclusions of law.

*Trial and Motion to Dismiss*

At trial, after the State rested its case, Lizarraga-Canche moved to dismiss the bail jumping charge. He argued that the State had failed to present sufficient evidence concerning his knowledge of the readiness hearing's date because it did not present testimony of the interpreter present at his arraignment. The State noted that the court had discretion to allow the State to reopen its case and that the State could reopen its case to call the interpreter as a witness. After a recess, the court stated that "I do think the knowledge element is failing and so on that basis I will grant the Motion." RP at 319. The court further stated that the State had not met its burden of proving knowledge, "[s]o I'm granting the Motion as to the Bail Jump charge." RP at 320.

However, the court immediately acknowledged that the State had a standing motion to reopen its case and that the court had discretion whether to grant or deny that motion. The court

then allowed for additional argument. After both parties argued, the court ruled that the State could call the interpreter to testify. Concerning its statement that it was granting the motion to dismiss, the court clarified that its intent was to allow the State to reopen its case rather than to dismiss the bail jumping charge.

The State then called the interpreter to testify. She stated that she had translated for Lizarraga-Canche at his arraignment and that she translated that Lizarraga-Canche had a subsequent hearing on April 7.

*Closing Argument*

During closing argument, the prosecutor (1) explained the State's burden of proof and reviewed the elements of each charge, (2) emphasized that the central issue was the jury instruction on knowledge, and (3) argued that the only reasonable inference was that Lizarraga-Canche knew that the vehicle was stolen. The prosecutor also stated that to find Lizarraga-Canche not guilty, the jury had to find that a person could avoid criminal responsibility by ignoring the facts. Defense counsel did not object to these arguments.

The jury found Lizarraga-Canche guilty of possession of a stolen vehicle and bail jumping. Lizarraga-Canche appeals his convictions.

ANALYSIS

A.    WAIVER OF *MIRANDA* RIGHTS

Lizarraga-Canche argues that the trial court erred in admitting his statements to Officer Endresen because his inability to understand the *Miranda* rights read to him in English prevented him from knowingly and intelligently waiving those rights. We disagree.

1.    Legal Background

To introduce incriminating statements made during the course of a custodial interrogation, the State must show that a suspect knowingly and intelligently waived his or her *Miranda* rights.  *State v. Mayer*, 184 Wn.2d 548, 556, 362 P.3d 745 (2015).  Waiver is made knowingly and intelligently and therefore is valid if the totality of the circumstances surrounding an interrogation demonstrate that the suspect chose to speak without coercion and had the requisite level of comprehension.  *Id.*  The defendant must have a complete awareness of the nature of the right being abandoned and the consequences of his or her decision to abandon it. *Id.* at 558.

Waiver may be made expressly or may be implied.  *State v. Terrovona*, 105 Wn.2d 632, 646, 716 P.2d 295 (1986).  A court may find implied waiver where the record reveals that a defendant understood his rights and subsequently volunteered information.  *Id.*

When a defendant's statement is to be offered into evidence, CrR 3.5(a) requires that the trial court hold a hearing to determine if the statement is admissible.  We review findings of fact entered following a CrR 3.5 hearing for substantial evidence.  *State v. Gasteazoro-Paniagua*, 173 Wn. App. 751, 755, 294 P.3d 857 (2013).  We review the trial court's legal conclusions about the adequacy of the *Miranda* warning de novo.  *Mayer*, 184 Wn.2d at 555.

Here, the trial court erred in failing to enter written findings and conclusions about whether Lizarraga-Canche's statement were admissible as required under CrR 3.5(c).  However, the absence of written findings is harmless error because the court's oral ruling is sufficient to allow for appellate review.  *State v. Bluehorse*, 159 Wn. App. 410, 423, 248 P.3d 537 (2011).

2.    Ability to Understand

The trial court heard conflicting evidence, and made an oral finding that Lizarraga-Canche understood his *Miranda* rights when they were read to him in English. The trial court's finding is supported by substantial evidence. Endresen read the *Miranda* warning from a department-issued card twice. When Endresen asked if Lizarraga-Canche felt comfortable speaking English, he said that he did. Both officers testified that Lizarraga-Canche had no trouble responding to questions in English. In addition, Lizarraga-Canche testified that he had lived with a native English speaker for two years, that he used both Spanish and English with his friends, and that he watched television in both Spanish and English.

The trial court's finding that Lizarraga-Canche understood what he heard supports a legal conclusion that Lizarraga-Canche waived his *Miranda* rights. Endresen read the *Miranda* rights to Lizarraga-Canche, the trial court found that Lizarraga-Canche understood what was read, and Lizarraga-Canche proceeded to talk to Endresen. This evidence is sufficient to show an implied waiver.

Accordingly, we hold that the trial court did not err in admitting Lizarraga-Canche's statements.

B.    DOUBLE JEOPARDY – REOPENING THE STATE'S CASE

Lizarraga-Canche argues that his conviction for bail jumping violates double jeopardy because the trial court initially granted his motion to dismiss and therefore could not subsequently allow the State to reopen its case.[3] We disagree.

---

[3] Lizarraga-Canche does not argue that the trial court's decision to allow the State to reopen its case was improper outside of the context of double jeopardy.

Under the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution, the State cannot place a person in jeopardy twice for the same offense. *State v. Ervin*, 158 Wn.2d 746, 752, 147 P.3d 567 (2006). Double jeopardy applies when jeopardy has previously attached, jeopardy has terminated, and the defendant is placed in jeopardy a second time for an offense that is the same in fact and law. *Id.*

Jeopardy may terminate in three ways: (1) if the defendant is acquitted, (2) if the defendant is convicted and the conviction is final, or (3) if the court dismisses the jury without the defendant's consent and the dismissal was not in the interest of justice. *Id.* at 752-53. Under the first category, a trial court's granting of a motion to dismiss for insufficient evidence qualifies as an acquittal. *State v. McReynolds*, 142 Wn. App. 941, 949, 176 P.3d 616 (2008).

However, a trial court's oral opinion has no final or binding effect unless it is formally incorporated into its findings, conclusions, and judgment. *Id.* at 306. A court's ruling is final "only after it is signed by the trial judge in the journal entry or is issued in formal court orders." *State v. Collins*, 112 Wn.2d 303, 308, 771 P.2d 350 (1989). Therefore, a trial court's oral statement of one position, even if given in language reflecting a ruling, is not final for the purposes of double jeopardy. *Id.* at 308-09.

Here, the trial court stated twice that it was granting Lizarraga-Canche's motion to dismiss the bail jumping charge. However, the trial court did not enter any formal order of dismissal and its oral ruling was not final for the purposes of double jeopardy. *Id.* at 308. Therefore, jeopardy never terminated on the charge.

Accordingly, we hold that Lizarraga-Canche's conviction for bail jumping did not violate double jeopardy.

C.    PROSECUTORIAL MISCONDUCT

Lizarraga-Canche argues that the State committed prosecutorial misconduct during its closing argument.  The prosecutor stated:

> To find the Defendant not guilty ladies and gentlemen you have to say that any person can escape criminal responsibility by simply ignoring the facts that are readily available and which they actually know – that a Defendant can avoid all consequences by wishing away knowledge.  So ladies and gentlemen he did know.

RP at 482.  Lizarraga-Canche claims that the prosecutor (1) misstated the law concerning the knowledge requirement for both charges and (2) misstated the State's burden of proof.  We hold that the statement did not improperly state the knowledge requirement and that even if the statement misstated the State's burden of proof, Lizarraga-Canche waived his claim by not objecting in the trial court.

1.    Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that "in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012).  We review the prosecutor's conduct and whether prejudice resulted therefrom "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.' " *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

When the defendant fails to object to the challenged portions of the prosecutor's argument, "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the

resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). The defendant must show that (1) no curative instruction would have eliminated the prejudicial effect, and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Id.* at 761.

2.    Permissive Inference of Knowledge

It is misconduct for a prosecutor to misstate the law. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). Lizarraga-Canche argues that during closing argument the prosecutor misstated the law regarding the knowledge requirement for both charges. He claims that the prosecutor improperly suggested that the jury could find the requisite knowledge if he had facts that would lead a reasonable person to have such knowledge.

The prosecutor argued that the evidence was so strong that the jury would "have to say that any person can escape criminal responsibility by simply ignoring the facts that are readily available *and which they actually know*." RP at 482 (emphasis added). The prosecutor's argument was that because the evidence was so overwhelming that the car was stolen and that Lizarraga-Canche was informed of the hearing date, Lizarraga-Canche would have had to willfully ignore that evidence not to have actual knowledge. And the prosecutor concluded by arguing that Lizarraga-Canche actually knew the facts that established his knowledge and that "he did know." RP at 482.

In context, the prosecutor was arguing that the evidence was so clear that the jury could only reach one conclusion – that Lizarraga-Canche knew the car was stolen and that the readiness hearing was on April 7. Accordingly, we hold that the prosecutor's argument did not improperly misstate the knowledge element of Lizarraga-Canche's charges.

        3.      Misstating the Burden of Proof

        Lizarraga-Canche argues that the prosecutor misstated the State's burden of proof by

stating that to find him not guilty the jury had to make a certain finding.

        It is misconduct for the prosecutor to misstate the State's burden of proof. *State v.*

*Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014). Courts have repeatedly held that a

prosecutor cannot argue that the jury must convict unless it finds a reason not to do so. *E.g.*,

*Emery*, 174 Wn.2d at 759-60; *State v. Anderson*, 153 Wn. App. 417, 431, 220 P.3d 1273 (2009).

In *Anderson*, this court explained that, because the baseline presumption is a defendant's

innocence, an implication that the jury has an initial affirmative duty to convict is improper. 153

Wn. App. at 431. Therefore, it is improper for a prosecutor to argue that "in order to find the

defendant not guilty, you have to say 'I don't believe the defendant is guilty because,' and then

you have to fill in the blank." *Id.* (quotation marks omitted); *see also Emery*, 174 Wn.2d at 759-

60; *State v. Johnson*, 158 Wn. App. 677, 683-85, 243 P.3d 936 (2010).

        Here, the prosecutor started by stating, "To find the Defendant not guilty ladies and

gentlemen you have to say . . . ." RP at 482. "This is a bad beginning because a jury need do

nothing to find a defendant not guilty." *Emery*, 174 Wn.2d at 759-60. The jury did not have to

find that Lizarraga-Canche lacked knowledge to find him not guilty. *Anderson*, 153 Wn. App. at

431; *see also Emery*, 174 Wn.2d at 760 ("[T]he defendant bears no burden.").

        But even assuming without deciding that the prosecutor's statement was improper,

Lizarraga-Canche waived his prosecutorial misconduct claim by failing to object at trial. To

avoid waiver, the error must have been so flagrant and ill-intentioned that an instruction could

not have cured any resulting prejudice. *Emery*, 174 Wn.2d at 760-61.

11

The Supreme Court has held that arguments similar to the one here could be cured by an instruction. In *State v. Warren*, the prosecutor repeatedly misstated the burden of proof, including by stating that "reasonable doubt does not mean beyond all doubt and it doesn't mean, as the defense wants you to believe, that you give the defendant the benefit of the doubt." 165 Wn.2d 17, 24-25, 195 P.3d 940 (2008). Defense counsel objected and the trial court gave an extensive curative instruction. *Id.* On appeal, the Supreme Court noted that, had the trial court not given "an appropriate and effective curative instruction, we would not hesitate to conclude that such a remarkable misstatement of the law by a prosecutor constitutes reversible error." *Id.* at 28. However, because of the trial court's instruction and the presumption that the jury would comply, the court rejected a claim that the improper statement was reversible error. *Id.*

Similarly, in *Emery*, the prosecutor argued in closing that "[i]n order for you to find the defendant not guilty, you have to ask yourselves or you'd have to say, quote, I doubt the defendant is guilty, and my reason is blank." 174 Wn.2d at 750-51 (alteration in original). The court noted that the argument was potentially confusing to the jury about its role and the State's burden of proof. *Id.* at 763. Even so, it was not of the type that had been held to be especially inflammatory. The court concluded that the argument was similar to *Warren* and therefore could have been cured with a proper instruction. *Emery*, 174 Wn.2d at 763-64.

Here, the prosecutor's argument, even if improper, was limited to a single instance in the context of a broader argument that related to the evidence. Therefore, it was less flagrant than the multiple and blatantly improper arguments at issue in *Warren* and arguably less improper than the argument in *Emery*. As the Supreme Court noted in those cases, an argument that

12

misconstrues the burden of proof often can be addressed at the time with a corrective instruction. A timely instruction also could have cured the argument here.

Accordingly, we hold that even if the prosecutor's argument was improper, Lizarraga-Canche waived his prosecutorial misconduct claim by failing to object.

D.      INEFFECTIVE ASSISTANCE OF COUNSEL

Lizarraga-Canche argues that he received ineffective assistance of counsel when defense counsel failed to object to the prosecutor's statements. We disagree.

We review ineffective assistance of counsel claims de novo. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced him or her. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 33. Prejudice exists if there is a reasonable probability that, except for counsel's errors, the result of the proceeding would have been different. *Id.* at 34.

We begin our analysis with a strong presumption that counsel's performance was effective. *Id.* at 33. To rebut this presumption, the defendant must establish the absence of any " 'conceivable legitimate tactic explaining counsel's performance.' " *Id.* (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). If defense counsel's conduct can be considered to be a legitimate trial strategy or tactic, counsel's performance is not deficient. *Grier*, 171 Wn.2d at 33.

The presumption of effective representation is heightened for the decision not to object during closing argument. "Lawyers do not commonly object during closing argument 'absent egregious misstatements.' " *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 717, 101 P.3d 1 (2004) (quoting *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir.1993)). Outside egregious circumstances, defense counsel's decisions about whether and when to object are a matter of strategic choice. *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007).

Here, defense counsel may have decided not to object because an objection would have brought unnecessary attention to the prosecutor's argument. The fact that a prosecutor's argument may have been improper does not, by itself, mean that defense counsel provided ineffective assistance for failing to object. *See In re Pers. Restraint of Cross*, 180 Wn.2d 664, 724-25, 327 P.3d 660 (2014) (holding that no ineffective assistance occurred where, despite failure to object, prosecutor's argument was not flagrant or ill-intentioned). We conclude that the prosecutor's argument was not so flagrantly improper to overcome the presumption that the failure to object was a strategic choice. *Davis*, 152 Wn.2d at 717.

Accordingly, we hold that Lizarraga-Canche's ineffective assistance of counsel claim fails.

E.      APPELLATE COSTS

Lizarraga-Canche asks that we refrain from awarding appellate costs if the State seeks them. The State represents that it will not seek appellate costs. We accept the State's representation and decline to award appellate costs.

## CONCLUSION

We affirm Lizarraga-Canche's convictions.

No. 49191-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, A.C.J.

We concur:

JOHANSON, J.

MELNICK, J.